## CURL v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

1. **Railroads:** ABSENCE OF TICKET-AGENT: NO GROUND OF ACTION. Where one desiring to purchase a ticket to ride upon a departing train was unable to do so on account of the absence or neglect of the ticket-agent, but he got upon the train and offered his fare to the conductor, with ten cents additional, which he had a right to do, but was wrongfully ejected by the conductor, *held* that the absence or neglect of the ticket-agent was not to be considered as a ground of damages.

2. **Evidence:** ADMISSION OF: ERROR WITHOUT PREJUDICE. The admission of evidence which ought to have been excluded is no ground for reversal, where the evidence was immaterial, and could not have prejudiced the appellant.

3. ——: OPINION EXCLUDED. Where the action was based upon the alleged wrongful expulsion of plaintiff by the conductor from defendant's train, the testimony of the conductor, that he thought he gave plaintiff time enough to get the money to pay his fare, was mere matter of opinion, and was properly excluded.

4. **Railroads:** EJECTMENT OF PASSENGER FOR NON-PAYMENT OF FARE: RIGHTS OF PARTIES: REASONABLE TIME: QUESTION FOR JURY. Where a passenger on a train wrongfully refuses to pay his fare, he is a trespasser, and the conductor may lawfully eject him; and, after such expulsion has been begun, the passenger cannot save himself from its consummation by then offering to pay his fare. But where the passenger does not refuse to pay, but lacks a portion of the money, (ten cents in this case,) and tells the conductor that he can borrow it of a fellow-passenger, and proceeds to make the effort, he is entitled to a reasonable time to do so. What is a reasonable time in such case depends upon the circumstances, among which are the length of the train and the time which the conductor has to do his work between stations; and, where the evidence is conflicting, it is a question for the jury. *Stone v. C., & N. W. Railway Company,* 47 Iowa, 82, and *Hoffbauer v. D. & N. W. Railway Company,* 52 Id., 342 distinguished.

5. ——: ——: RIGHTS AND DUTIES OF PASSENGER AND CONDUCTOR: INSTRUCTION. Where a controversy arises between a passenger and the conductor of a railway train about the payment of fare, it is the right and duty of each of the parties to do whatever an ordinarily and reasonably prudent man would do under like circumstances; and an instruction to that effect is approved in this case.

6. ——: ——: NO EXEMPLARY DAMAGES WITHOUT MALICE SHOWN. In an action for damages for the wrongful ejectment of plaintiff from defend-

ant's train, it was error for the court to instruct the jury that they might allow punitive damages, provided they found from the evidence "that the conductor willfully used unnecessary force in ejecting plaintiff from the train." Punitive or exemplary damages cannot be recovered in such a case in the absence of a showing of malice. See *Fitzgerald v. C., R. I. & P. Railway Company*, 50 Iowa, 79, and other cases cited and followed.

*Appeal from Washington Circuit Court.*

FRIDAY, APRIL 25.

THIS is an action to recover damages for an alleged unlawful, negligent, willful and malicious removal of the plaintiff from a train of cars of the defendant by a passenger conductor. There was a trial by jury, and a verdict and judgment for the plaintiff for $500. Defendant appeals.

*M. A. Low*, for appellant.

*Wilson & Kellogg* and *Jackson Roberts*, for appellee.

ROTHROCK, J.—I. The plaintiff claims that in March, 1881, he went to the ticket-office of the defendant, at Keota, to purchase a ticket and take passage upon a passenger train for Washington, Iowa, and that the ticket-agent was absent from his post of duty; that the train arrived at the station, and plaintiff went out of the ticket-office and found the agent upon the platform, and asked him for a ticket, and was told by the ticket-agent to pay his fare upon the train; that he went aboard the train, and, when the conductor came through collecting the tickets of the passengers, he offered him forty-five cents, which was the ticket fare for the trip, which the conductor refused to receive, and demanded ten cents in addition, being the amount of fare when paid upon the train, and that thereupon plaintiff borrowed ten cents from a fellow passenger, and tendered that and the forty-five cents to the conductor, which he refused to receive, and, without any cause, stopped the train and forcibly ejected him therefrom, away from a station and in a storm.

The court instructed the jury that, "under the pleadings and evidence in this case, the plaintiff is not entitled to either a verdict or damages on account of the alleged failure or refusal of the defendant's agent at Keota to sell him a ticket." This instruction was evidently given to the jury upon the theory that the plaintiff had the right to pay his fare upon the train, by paying ten cents in addition to the ticket fare. The instruction was plainly correct, because there was no evidence that the plaintiff refused to pay the additional ten cents by reason of any neglect of the ticket-agent to attend to his duty in the sale of tickets. And it is not claimed by the defendant that the plaintiff did not have the right to pay his fare to the conductor on the train. We are, then, to consider the rights of the parties growing out of what transpired upon the train. The plaintiff testified as follows:

1. RAILROADS: absence of ticket-agent: no ground of action.

"In going on the cars, I acted on what the agent said. It was a sort of stormy day. It had been a kind of rain and snow together in the evening, and along towards night it got to sleeting and blowing from the east. I took my seat about two-thirds of the way towards the front end of the car, on the south side. The conductor came around for tickets pretty soon after we started, when we got a mile or two. He entered the car at the east end. He came up to me and I handed him the change. I still held it in my hand as I took it up from the counter in the depot. It was forty-five cents. I said 'Here is your money.' I said I did not have any ticket; I did not have a chance to get any ticket. He says, 'How much is it?' I told him it was forty-five cents. 'Well,' he says, 'I want ten cents more, or you will have to get off,' he says, 'or pay ten cents more.' I told him then he could get his pay out of that as far as Chester; and I would buy a ticket at Chester, to Washington. He says, 'Cannot you borrow ten cents on this train?' I told him I did not know; I would try. I did try. I turned to James Long. He sat on the north side of the car opposite me, on the end of the seat

next a fellow. I could reach him across. I asked him if he had ten cents. He said he had not. Mr. Singleton sat right in front of me, with his face towards me; the seats were turned together. I asked him, and he turned and took his pocket-book out and handed me the dime. He had not more than handed me the dime before the conductor pulled the rope. I says, 'Here is your money.' He says, 'Hold on; I do not know that I want your money now.' The train began to slack up, and he says, 'I don't want your money; you will have to get off.' Long answered me immediately when I asked him for the money, and I asked him as quick as I could speak after the conductor told me to borrow it. I then turned immediatly and asked Singleton. I think he had his hand in his pocket before I asked him for it. He pulled it right out as quick as it could be done handily, and handed it to me. The conductor was standing at the end of the seat in the isle, a kind of between us. I suppose he was looking at me at first. He could have seen me and Singleton at the same time; he was facing both of us. I handed this ten cents to the conductor as soon as Singleton handed it to me. I never refused to pay it. I told him, when he said he wanted ten cents more, that forty-five cents was all the money I had; and he said I could borrow ten cents more, or get off the train. Just about the time I handed him the money he reached up and pulled the bell-rope. I told him there was the money, and he said, 'Hold on; I don't know as I want your money now,' and hesitated a little bit, I could not tell how long, and he says, 'I don't want your money; the train is stopping; you will have to get off.'

"I told him I was not going to fight about it; that I wanted to go. He said I would have to get off, and he caught me by the shoulders and pulled me out into the isle, and kept a kind of pushing and hurrying me along towards the door. I think he had his hand on my shoulder all the way out. We went onto the platform. The brakeman was at the door; and he pushed me onto the platform, and was going to push me

down the steps. The train was going. I told him not to push me off when the train was going. He stopped, and I told him there was his money; that I was subpœnaed here on a suit for the next morning; and that was all the way I had to come down. The roads were snowed up, and I could not get here any other way; that he had better let me go; and he hesitated a moment, and I thought he was going to let me go; but he said, 'No, you will have to get off;' and he shoved me off onto the step, and I got off.

I started back at first to Keota, but turned round and followed the train to Chester, and then to Washington, arriving about twelve o'clock that night. I walked on the railroad a good part of the way, which was filled a good part of the way with pounded rocks, and the ties were covered with sleet. It was sleety and stormy and the wind was blowing in my face. I think I was put off about a mile and a half from Keota. There was a house about one-fourth mile north of me. I guess that was the closest. The wind was cold."

The foregoing is the testimony of the plaintff as detailed by him in his examination in chief, and it was not varied in any material respect by the cross-examination. This testi- mony was corroborated in its substance by three other wit- nesses, who were fellow passengers with the plaintiff, and sat in seats close by him, one of them being the person from whom the plaintiff borrowed the ten cents. This witness stated that the "conductor told him (plaintiff) that he would have to have ten cents more, and asked him if he could not borrow it, or something to that effect. Curl said that he did not know, but would try. He asked Long, and he did not have it. Curl then asked me if I could lend him the ten cents. I got it, and handed it to him, and he presented it to the con- ductor. The conductor did not then object to the amount of money. I don't think it was very long after the conductor asked Curl if he could not borrow the ten cents till he tend- ered it to him. Of course, I could not tell how long it was. I suppose it was not more that a half minute; it might be,

but not more. I think that Mr. Curl said that if he would let him go to Chester he would get a ticket there. I do not think the conductor had pulled the bell at the time he said that. It runs in my mind that the conductor rang the bell when I was getting the money for him, just after he asked me for the money    *    *    *." This witness testified that he sat in the seat next to plaintiff, and that the seats were turned and faced each other.

Another witness stated that the conductor pulled the bell-rope about the time the money was passed over from the passenger who made the loan to the plaintiff. Another stated: "Somewhere about the time Mr. Curl got the money, the conductor pulled the bell-rope and said, 'I dont know whether I want your money or not.'"

In the course of the examination in chief of one of the plaintiff's witnesses, he was asked the following questions:

2. EVIDENCE: admission of: error without prejudice.

*Question:* "What if any remarks did he (the conductor) make after ejecting him, and when he re-entered the car?"

*Answer:* "He said—I think he used these words—that it was d——d funny, or mighty funny, that a man should start for Washington with only forty-five cents in his pocket."

*Q.* "What if anything did he say to Mr. Singleton with reference to his dime?"

*A.* "He told him he was out his dime. He said this publicly."

This evidence was introduced over defendant's objection, and this ruling of the court is assigned as error. The ground of the objection to the evidence is that it is not a part of the *res gesta,* and is inadmissible, as being the declaration of an agent or servant, made after the fact, and not while engaged in the negligent and unlawful act complained of.

We think that probably the objection would be well taken if the evidence was at all material. It is very plain that it could have in no manner influenced the jury. It was in no sense an admission that the act of the conductor in ejecting

the plaintiff was wrong, nor did it tend to show malice upon his part. It is not claimed that it was spoken in anger. We cannot see that the defendant could have been prejudiced in any way by its admission. It had no more bearing upon the rights of the parties to the action than if the conversation had been upon some subject entirely foreign to the transaction.

II. The conductor who ejected the plaintiff from the train was a witness for the defendant. In giving his account of the transaction, he stated: "I gave him time enough, I thought, to get the ten cents." This statement was excluded from the consideration of the jury on motion of the plaintiff, and complaint is made of this ruling. It was strictly and manifestly correct. It was not proper evidence, simply because it was the mere opinion of the witness upon the most material point in the case. To permit such testimony to go to the jury would be tantamount to allowing the witness to determine the very point in the case, which the jury were required to determine upon facts, and not upon opinions.

*3. ——: opinions excluded.*

III. The court gave to the jury the following, among other instructions:

"5. If you find from the preponderance of the evidence that, within a reasonable time after demand thereof by the conductor, the plaintiff tendered him the regular ticket fare from Keota to Washington, and ten cents additional, the conductor had not the right to eject the plaintiff from the train.

*4. RAILROADS: ejectment of passenger for non-payment of fare: rights of parties: reasonable time: question for jury.*

"6. It must appear, however, from the preponderance of the evidence that the tender was made within a reasonable time. If the plaintiff delayed the tender beyond this, and until after the conductor had rung the bell to stop the train for the purpose of the plaintiff's ejectment, it was too late, and any ejectment of the plaintiff in the proper manner,

that is, without indignity or more than sufficient force, was rightful.

"7. Reasonable time for making the tender, as contemplated by these instructions, depends on the circumstances and facts constituting the transaction. If, upon receiving the demand for the additional ten cents, the plaintiff announced to the conductor his willingness to make payment, and at once proceeded to borrow the sum required from a friend in a neighboring seat, and they were, in the ordinary manner and time for such a transaction, producing and did produce the money, and tender it, making the full sum due to the conductor, it was in time, and the conductor should have received it, and not ejected the plaintiff. But if the plaintiff, instead, after the demand, and being warned that if he delayed until after the bell was rung he would have to get off the train, refused to pay, answered that he would not pay, refused to state whether he would or would not pay, or neglected or refused to borrow the sum needed to enable him to make the payment, until after the bell was rung signaling the train to stop for the purpose of the plaintiff's ejectment, he was too late, and his ejectment, if properly made, was rightful. Whatever an ordinarily and reasonably prudent and judicious man would have done under like circumstances, it was the right and the duty of both the conductor and the plaintiff to do in this case."

The first of these instructions is claimed to be erroneous. It is said in argument that "it is doubtless true, as an abstract proposition of law, that the conductor of a train must wait a reasonable time for the passenger to comply with his demand for fare; but it is not true that it is a pure question of fact in any case whether a reasonable opportunity was given to the passenger to pay fare." It is contended that the question as to the reasonableness of the time given to pay the fare should not have been submitted to the jury, because, when the plaintiff declared his inability to pay, it was a question of law, and the conductor had the right to immediately

stop the train and eject the plaintiff; and it was not a question for the jury whether the time given was reasonable.

The rule which the defendant invokes is that announced in *Stone v. Chicago & Northwestern Railway Company*, 47 Iowa, 82, and *Hoffbauer v. D. & N. W. Railway Company*, 52 Id., 342.

The reason of the rule is that, where a passenger wrongfully refuses to pay his fare, he is a trespasser, and the railroad company thereafter owes him no duty, and the conductor may immediately stop the train and eject him therefrom. And in the last cited case, where a passenger refused to pay his full fare, and after some altercation the conductor rang the bell and stopped the train, and the passenger, rather than to be put off the train, offered to pay full fare, it was held that a passenger could not "test the regulations of the company and the firmness of the conductor by refusing to pay full fare, and still save himself from expulsion by tendering full fare, after expulsion had commenced."

We have quoted the testimony of the plaintiff, and some of that of his witnesses, mainly to show how different the facts are from the facts in the cases cited. It is true, the testimony of the conductor and other witnesses tended to show that some time was given to produce the extra ten cents. Here, then, was a conflict of evidence upon this question; and it was clearly a question for the jury to determine whether or not the time given was reasonable. And we have quoted the evidence for the further purpose of showing that the jury were fully warranted in finding that the time given was unreasonable. Suppose, when the conductor of this stub train, composed of two cars, approached the plaintiff, seated, as he was, about the middle of the first car, and, when he demanded his ticket, the plaintiff had offered an insufficient amount of money, and, instead of the conductor making the suggestion that he should borrow enough to make up the deficiency, the plaintiff had stated that he had a friend in the next car from whom he could and would borrow; or suppose that he had

money in some of his pockets, and was slow about finding it;—if such a state of facts were. shown without conflict in the evidence, the immediate ringing of the bell and stopping of the train and ejection of the passenger, away from a station and in a storm, would be an act of wanton and malicious cruelty. And, if the plaintiff's witnesses are to be believed, the transaction in this case is as plainly unjustifiable as in the cases supposed. And, when the evidence upon the question was in conflict, it was the province of the jury to determine it. It is proper to say that we use the term "stub train" in no derisive sense. What we mean is that, on a train composed of but two cars, there is no necessity that a conductor should ring the bell to stop the train the moment a passenger fails to produce his ticket or money, unless, possibly, where the passenger demands that he shall be carried without paying full fare. The duties of a conductor on such a train require no such haste.

IV. It is claimed that the sixth instruction is erroneous, because the jury were therein told that if the plaintiff delayed the tender beyond a reasonable time, "and

THE SAME.

until the conductor had rung the bell to stop the train for the purpose of the plaintiff's ejectment, it was too late" to make the tender. It is said that this instruction is erroneous, because it assumed that there was evidence from which the jury might have found that full fare was tendered before the bell was rung to stop the train; and that there was no such evidence.

We have stated the evidence upon that question; and if we were to concede that no witness stated that the money was tendered before the bell was rung, we do not think this instruction is erroneous. It does not assume that there was such evidence. What is plainly meant by the instruction is that, if the plaintiff allowed a reasonable time to elapse without tendering the full fare, and if, after the lapse of such time, the conductor rang the bell, a tender after that would be

too late. Taking the whole instruction together, this is its plain meaning.

V. Next, it is contended that the seventh instruction is erroneous. One of the objections urged thereto, we think, is of sufficient importance to be noticed. The closing sentence of the instruction is as follows: "Whatever an ordinarily and reasonably prudent and judicious man would have done under like circumstances, it was the right and duty of both the conductor and the plaintiff to do in this case." The objection to this language is that the question was not what an ordinarily and reasonably prudent man would have done under like circumstances, but what such a man, exercising due *diligence* and *dispatch*, would have done. If, then, the instruction had contained this qualification, it would have met the objection of counsel. We think the distinction made is too metaphysical for practical application in the trial of a cause to a jury. It implies that the jury may have taken the standard of the acts of prudent and judicious men while acting imprudently and injudiciously. No such inference can be drawn from the language of the instruction.

VI. We have written enough upon this case. We have determined every question in the record which appears to us to demand attention. It is true, there are other errors assigned, and they are argued apparently with equal confidence with those which we have discussed. But we must be excused from noticing them, except in this general way. A mere statement of them in connection with the facts as disclosed in the record would demonstrate, without comment from us, that they have no merit in them. We cannot thus employ our time in discussing mere criticisms upon rulings of the court below, which in no manner affect the case. We are even asked to reverse the judgment because it is not supported by the evidence. A mere cursory reading of the evidence which we have quoted is a sufficient answer to this de

mand, in view of the rule that we do not disturb verdicts founded upon conflicting evidence.

### OPINION UPON REHEARING.

BECK, J.—A rehearing having been allowed in. this case, it has been again argued. Upon a reconsideration of the whole case, and all arguments submitted therein, we remain satisfied with the conclusions announced in the foregoing opinion upon all questions discussed and decided therein. They are so fully and clearly presented that nothing more need be said in their support. However, one objection urged by counsel for defendant escaped our attention in our former consideration of the case. We are satisfied that it was well taken, and that thereon the judgment of the court below ought to be reversed. We will proceed to consider it.

*6. ——: ——: no exemplary damages without malice shown.*

The petition alleges that the conductor "maliciously, unlawfully, brutally, forcibly, wrongfully and violently" ejected plaintiff from the car. As applicable to the issue joined upon this allegation of the petition, the court gave an instruction in the following language:

"10 If you find for the plaintiff, and that the conductor had no right to eject him from the train, and the evidence satisfies you that the plaintiff suffered pain of body, or was put to trouble and inconvenience in traveling to a place of shelter in consequence of the ejectment, you should allow him as damages such sum as in your sound discretion will fully and fairly compensate him therefor. And if you find that the conductor willfully used unnecessary force in ejecting the plaintiff from the train, you may allow reasonable punitive damages, such as in your sound discretion is commensurate with the wrong, and will tend to prevent the recurrence of those like it."

This instruction is erroneous in that it does not make the recovery of exemplary damages dependent upon malice of the wrong doer. It holds that the willful use of unnecessary

force is a ground for allowing exemplary damages. An act willfully done may not be accompanied by malice, that is, a spirit of enmity, malevolence or ill will, with a desire to harm and a disposition to injure. One may willfully do an act with innocent purposes;—that is, he may absolutely, stubbornly and with design act lawfully and with good intentions. The instruction fails to present the thought that the element of malice must accompany acts of the kind complained of in the petition; otherwise the injured person cannot recover exemplary damages. This doctrine is recognized in numerous decisions of this court. See *Fitzgerald v. The C., R. I. & P. Railway Company*, 50 Iowa, 79; *Jones v. Marshall*, 56 Id., 739; *Brown v. Allen*, 35 Id., 306. For the error found in the instruction quoted above, the judgment of the circuit court must be

REVERSED.