## KEIRNAN v. HEATON.

1. **Trespass:** CULTIVATION OF LAND WITHOUT LEAVE: MEASURE OF
   DAMAGES. Where a person without leave enters upon the uncultivated
   land of another and raises a crop thereon and removes the same, the
   owner is entitled to recover the value of the crop removed, and the
   depreciation, if any, in the market value of the land on account of its
   cultivation; but the damages are not to be allowed in such case with
   reference to the owner's intention to allow the land to remain untilled,
   and evidence of such intention is immaterial.

2. ———: ———: EXEMPLARY DAMAGES. Although the defendant in such
   case intended to commit a trespass, yet technical and intentional tres-
   passes, without malice, on unimproved land are so common in this state
   that malice is not to be inferred from the mere fact of such trespass; and
   where there was no other evidence of malice, it was error to instruct the
   jury that if they found malice they might allow exemplary damage.

*Appeal from Madison Circuit Court.*

WEDNESDAY, JUNE 16.

ACTION to recover for trespass to real estate, and for appro-
priating certain crops grown thereon. There was a trial to

a jury, and a verdict and judgment were rendered for the plaintiff. The defendant appeals.

*Dabney & Guiher*, for appellant.

*Ruby & Wilkin*, for appellee.

ADAMS, CH. J.—The plaintiff is the owner of about ninety acres of land in Madison county, and is a non-resident. At the time of the acts complained of the land had never been cultivated by the plaintiff nor any one else, though, as we infer, the land in the neighborhood had been settled upon and cultivated for many years. The defendant, seeing the land lying in that condition, conceived the idea of fencing and cropping it. He seems to have known that he had no right to do so, but it does not appear from the evidence that he had an intention of injuring the land. His idea seems to have been shown by what he said to one of his neighbors. One Baur testified: "He talked to me how he could raise a crop in there, and probably the owner would not appear, and he would fence it in, and it would not hurt the land." In the spring of 1884 he proceeded to carry out his idea. He fenced, broke and cultivated a little over fifty acres, and took off the crop in the fall, most of which was corn. Soon thereafter this action was commenced. The plaintiff recovered $400, which appears to have been somewhat more than the value of the crop. The defendant contends that the plaintiff was not, on the whole, injured, but benefited, and that his recovery should have been limited to nominal damages as for a mere technical trespass.

I. The court instructed the jury, in substance, that they might allow for the value of the crops taken. This instruction is complained of, but, in our opinion, it is

1. TRESPASS: cultivation of land without leave: measure of damages.

correct. As the defendant was a mere trespasser, the crops belonged to the plaintiff, and they remained his even after the severance. See *Murphy v. Sioux City & P. R. Co.*, 55 Iowa, 473, and cases cited. The removal and appropriation of the crops,

then, were an injury distinct from any injury done to the land. It is true that it is not expressly averred that the plaintiff was the owner of the crops, and the defendant relies upon the want of such averment. But the facts averred showed the ownership, and that, in our opinion, is sufficient. The rule as to the measure of damages in a case like this appears to us to be correctly stated in *Stuart v. Phelps*, 39 Iowa, 18. The injury was a willful injury, and in this the case is distinguishable from *Chamberlain v. Collinson*, 45 Iowa, 433.

II. Evidence was introduced showing that the plaintiff's purpose was to allow the land to remain untilled, and other evidence was introduced showing that the land THE SAME. was damaged by being broken, if it was to remain long untilled, because it would be more or less washed and run into ditches, and would grow up to weeds. In our opinion, it was error to allow damages with reference to the proven purpose of the plaintiff to allow the land to remain untilled. Every person who has sustained an injury from the wrongful act of another is bound to use a reasonable effort to limit the effect of the act. This doctrine is too elementary to require support by citation of decisions. After the land had been broken it should be used as good husbandry required that it should be in that condition, and the question was as to how much less, if any, the land was worth in the market by reason of its having been broken. Now, we have to say that it does not appear to be suggested that the land was worth less in the market. Indeed, it seems probable that the land, taking into consideration the breaking and fencing both, was worth considerably more than it would have been. We think that the plaintiff's actual damages were not greater than the value of the crops removed.

III. The court instructed the jury, in substance, that if they found malice they might allow exemplary damages. 2. ——: ——: The defendant complains of this instruction. exemplary damages. We are not prepared to say that exemplary dam-

ages are not allowable for malicious injury to real estate. But malice is not to be inferred from the mere fact that the plaintiff intended to commit a trespass. Technical trespassers upon real estate are very common. It is a matter of common observation that many persons in this state, seeing grass growing upon unoccupied land, which would otherwise go to waste, enter wrongfully upon the land, without any pretense of right, and cut the grass, and convert it into hay, and appropriate the hay. We could not properly sanction a rule which would render all such persons liable for exemplary damages. There may, in one sense, be in such cases a willful wrong; but in the absence of any intention to put the land-owner in a worse condition than he would otherwise have been, we do not think the trespasser's acts can be deemed malicious. Now, while the defendant took a great liberty, and his conduct was entirely unwarrantable, and while we do not feel disposed to encourage such conduct, we have to say that we see nothing in the evidence tending to show that the defendant intended, in what he did, to injure the plaintiff's land, or that he did in fact injure it. He intended, of course, to appropriate the crops, but the crops were the result of his own labor; and while they were not his, yet upon this question of malice we must look at his acts as a whole; and, so looking at them, we see no evidence that they were malicious.

In our opinion the instruction cannot be sustained.

REVERSED.