MARIE SEBASTIAN, appellee, v. CECIL WOOD, appellant.

No. 48586.

(Reported in 66 N.W.2d 841)

NOVEMBER 16, 1954.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, and B. C. Sullivan, of Rockford, for appellant.

Westfall, Laird & Burington and Gilbert K. Bovard, all of Mason City, and Elwood, Anderson & Elwood, of Cresco, for appellee.

BLISS, J.—About 10:30 p.m. on March 20, 1952, Donald Sebastian, husband of plaintiff, was driving his Ford automobile east on paved Highway No. 9. Mrs. Sebastian was in the front seat holding their sleeping three-year-old son. Their six-year-old daughter was asleep in the back seat. The car was traveling on the right or south lane of the pavement at a speed of about 45 to 50 miles an hour. They were returning from Mason City where they had left Mr. Sebastian's mother in a hospital. When about eight miles west of Osage they saw the headlights of an automobile in its proper lane approaching from the east at about the same speed that they were going. As the car approached it came over onto the south half of the pavement, and Mr. Sebastian then drove his car off the pavement entirely onto its south shoulder.

As the other-car continued to veer to the south and onto the south shoulder, Mr. Sebastian turned his car clear back onto the south half of the pavement in an attempt to avoid a collision, and when he did so the driver of the other car drove his car to his right into the south half of the pavement, where the cars came together head on. Sebastian applied his brakes when he saw he could not get out of the way and the cars stopped at the place of impact. Defendant was operator of the westbound car.

Mr. Sebastian was thrown over the steering wheel and his right knee broke off the heater control under the dash. It was a very cold night. Plaintiff struck the windshield with the side of her face and slumped to the floor motionless. The little boy was thrown on top of the heater. Mr. Sebastian procured a flashlight from defendant and after some time stopped a motorist who took plaintiff and the children to the hospital at Osage. Plaintiff was seriously injured, and disfigured about the face. She received surgical attention and more plastic surgery will be required.

A highway patrolman arrived shortly after the collision. He testified that: both cars were on the south side of the pavement; the Wood car was almost completely on the south shoulder, with the right front wheel on the pavement; the Sebastian car was completely on the pavement and "pretty near on the south side of the road a little more towards the center"; Mr. Sebastian returned from the hospital while the patrolman was there; when he arrived Cecil Wood was sitting behind the wheel of his car with another man beside him; there was some blood on defendant's face but he said he "wasn't hurt"; both men remained in defendant's car while he investigated matters, until he asked them to step out; "when Cecil Wood stepped out, he was very unsteady. I had observed when I first talked to him that he smelled very strongly of liquor when he was sitting in the car, and his eyes, the pupils, were very dilated at the time and his speech was incoherent and it was just a little difficult to get exactly what he was saying. He acted kind of like he was in a stupor, but when I got him out and looked him over, he had a hard time standing and was very unsteady on his feet. He had all of the actions of a person that was very intoxicated. I found two or three cases of beer, as I remember it, in his car and I believe there was some whiskey too. I had Wood and his companion

get in our car, and when we got into Osage, I had a blood test taken. I kept the blood in my possession and turned it over to Dr. Morgan at his office in Mason City. Until I turned it over it was in my possession at all times. As a member of the Iowa Highway Patrol I have had occasion in many instances to observe intoxicated persons. In my opinion, Cecil Wood was on the night in question intoxicated when I observed him. The result of his blood test was 208 milligrams of alcohol to 100 centigrams of blood." Defendant's companion was intoxicated and such charge was filed against him.

It was stipulated that defendant pleaded guilty in the district court of Mitchell County, Iowa, to the crime of driving a motor vehicle while intoxicated on the public highways of Iowa, at the time of the collision. The defendant, as a witness for himself in the trial of this case, testified that he was intoxicated while driving his automobile at said time and place.

Two other young men, both adults, were witnesses for plaintiff. We will refer to the testimony of but one of them, as they were in complete agreement. Clinton Mitchell, married and employed in Osage, testified that: in the late evening of March 20, 1952, he was driving his automobile, accompanied by Junior North, on Highways No. 9 and No. 218, going west into Osage: "I first saw the Cecil Wood car when it was about a quarter mile outside the city limits of Osage * * * When I first saw the Cecil Wood car, it was about straddle of the black line, and as it advanced on westward, he went to the left-hand side of the road there, and right in front of a body shop on the east edge of Osage, he was clear over on the left-hand side of the road. He was about to meet a semitrailer and the semitrailer went clear off the road and he avoided an accident. Then he went back on his own side of the road, and then again back across on the other side on the rest of the way through Osage. I would say I followed him about a half a mile when he was in the city limits of Osage. I followed him through the business district. During the course of following him for approximately a half a mile, I would say that he went to the left half of the pavement about four or five times. We had followed him pretty well through the business district. After we quit following him, we went over to the sheriff's office, but the sheriff and his deputy were gone, so we reported the license num-

ber to the sheriff's wife. Then we went back uptown and had lunch. After we left the café we saw a policeman who told us about an accident and so we went out to see if it was the car that we had been following. We found it happened about eight miles west of Osage on Highway No. 9. I noticed it was the Cecil Wood car and the same one that we had followed through Osage. It had the same license number we had taken down."

I. Plaintiff pleaded her cause of action in two divisions, the first one being on her individual claim, and the second on the claim which her husband assigned to her. In each division were the following allegations:

"That said Cecil Wood was negligent in the following particulars, which negligence was the proximate cause of said accident and the resulting injuries:

"1. In failing to keep a proper lookout.

"2. In failing to have his car under control.

"3. In failing to give one half of the traveled way by turning to the right when meeting the car in which this plaintiff was riding."

By amendment the following was added to each division: "Par. 2a. The defendant also knowingly and willfully drank intoxicating liquor, became intoxicated and thereafter knowingly and willfully drove his vehicle in a reckless, wanton and grossly negligent manner, all of which was the proximate cause of the accident herein referred to and the resulting injuries."

Defendant's motion to strike these allegations was overruled. By answer he admitted the collision but denied all other allegations of the petition as amended.

II. Defendant assigned two errors: "No. 1. The court erred in giving Instruction No. 12 which permitted the jury to award exemplary damages.

"No. 2. The court erred in giving Instruction No. 12 in permitting the jury to award exemplary damages based on the fact that the driver of the automobile was intoxicated at the time of the collision in which plaintiffs were injured. In the case at bar defendant admitted his intoxication and pleaded guilty to operating a motor vehicle while intoxicated, and was duly sentenced."

Defendant asserts that "it is a well-settled rule of law in this State that before the question of exemplary damages may be properly submitted to the jury malice must be alleged and proven", and that "in the case at bar malice was alleged, but was not proven, as the record is bare as to any proof whatsoever of malice."

We will discuss the two errors relied upon together. Defendant assigns no others and challenges the judgment in no other respect. Instruction No. 12, of which defendant complains, is herein set out in full:

"Instruction No. 12·

"The plaintiff in each Division of her petition has asked to recover over and above her actual damages what is known in law as exemplary damages. You are instructed that the law of this State permits but does not require a jury to allow exemplary damages in certain cases if it is found by the jury that the act of the defendant causing the injury complained of is wanton, reckless and grossly negligent. By wanton and reckless, as these terms are used in this case, is meant something more than negligence, but is meant that an act is done in such a manner and under such circumstances as to show heedlessness and an utter disregard and abandon as to what result may flow from the doing of an act or from the manner in which it is done.

"Exemplary damages are not compensatory in the ordinary sense, but are allowed by way of punishment to restrain the defendant and others from the commission of like acts in the future.

"So in this case if you find from the evidence that the defendant drank intoxicating liquor and became intoxicated and then drove his car while so intoxicated as to make his conduct in driving upon a public highway wanton, reckless and grossly negligent as those terms are defined herein, you may allow to the plaintiff exemplary damages in addition to her actual damages as explained to you in the preceding paragraph.

"In determining the amount of exemplary damages, if any, to be awarded the plaintiff, the court can give you no exact rule, but you should be guided by your careful and well-considered judgment and allow, if any, such an amount and such only as you shall find the plaintiff entitled to receive in addition to her actual

100

damages under all the facts and circumstances as shown by the evidence and under these instructions.

"In no event may you allow the plaintiff as exemplary damages more than is asked for in each Division of her petition, nor may you allow any exemplary damages unless you find in fact that the defendant's conduct was wanton, reckless and grossly negligent as those terms are herein defined."

III. Defendant is mistaken in his statement that plaintiff alleged malice on the part of defendant. There was no express allegation of malice against defendant in plaintiff's pleadings. Any inference thereof would have to be found in the language of "Par. 2a", supra. The word "malice" is not in challenged Instruction No. 12. Plaintiff states in her printed argument the "allegations in her petition to support the submission of the case on the grounds of exemplary damages read as follows", and she then sets out "Par. 2a" of her petition. Therefore the only question to be answered by this court is whether these allegations, and the evidence in support thereof, sustain and justify Instruction No. 12, and the judgment for $2000 as exemplary or punitive damages. There is no complaint by defendant that the amount awarded therefor is excessive, or disproportionate to the amount of $10,960.95, for which judgment was rendered plaintiff for her individual actual damages. Defendant's sole contention on this appeal is that the element of malice is an essential factor in the recovery of exemplary damages.

IV. A reference to the nature of exemplary or punitive damages, sometimes designated as "smart money", and the purposes of their allowance may be helpful. Their main purpose as indicated in their designation is that they are awarded under proper circumstances and conditions as a punishment for the particular party involved and as a warning and an example to him in the future, and to all others who may offend in like manner. The award of such damages constitutes an effective deterrent to such offenders, and a salutary protection to society and the public in general. They are not recoverable as a matter of right and are only incidental to the main cause of action, and can be awarded only when actual and substantial damages are allowed. They are in no way compensatory, and while they

have a secondary purpose in adding to the complainant's award because injury to him may well have been aggravated by its malicious, oppressive, willful, wanton, or reckless causation, yet, whatever benefit he so receives comes to him not as compensation for the wrong done him but as purely incidental and by the grace and gratuity of the law, as punishment of the wrongdoer, and as an example and deterrent to others. The opinions of this court have always emphasized the thought that the purpose of exemplary damages was the punishment, and prevention of similar future offenses. The allowance of such damages is wholly within the function and province of the jury, to be granted or denied in the exercise of a wise discretion, whether the moving cause be effected by malice, oppression, wantonness, recklessness, or gross negligence, and, if allowed, to fix the amount. Many of our decisions sustain these statements. We name but a few: Parkhurst v. Mastellar, 57 Iowa 474, 480, 481, 10 N.W. 864; Byford v. Girton, 90 Iowa 661, 664, 57 N.W. 588; Hendrickson v. Kingsbury, 21 Iowa 379, 386; Constantine v. Rowland, 147 Iowa 142, 148, 124 N.W. 189; White v. International Text Book Co., 164 Iowa 693, 695, 146 N.W. 829; Ahrens v. Fenton, 138 Iowa 559, 562, 115 N.W. 233; Boom v. Boom, 206 Iowa 70, 74, 75, 220 N.W. 17; Morrow v. Scoville, 206 Iowa 1134, 1138, 1139, 221 N.W. 802; Gregory v. Sorenson, 214 Iowa 1374, 1385–1387, 242 N.W. 91; Kuiken v. Garrett, 243 Iowa 785, 799, 800, 51 N.W.2d 149; Reutkemeier v. Nolte, 179 Iowa 342, 351, 161 N.W. 290, L. R. A. 1917D 273.

V. In support of defendant's contention that malice is an essential element to the recovery of exemplary damages he cites Williamson v. Western Stage Co., 24 Iowa 171, Brown v. Allen, 35 Iowa 306, 311, Curl v. Chicago, R. I. & P. R. Co., 63 Iowa 417, 428, 429, 16 N.W. 69, 19 N.W. 308; Sokolowske v. Wilson, 211 Iowa 1112, 1114, 235 N.W. 80, and Kieman v. Heaton, 69 Iowa 136, 138, 139, 28 N.W. 478. In these cases and others which might be cited, the question was whether the trespass, ejectment, or other act complained of, was with or without wrongful intent. There was evidence of unlawfulness or unnecessary force or negligence supporting an allowance of compensatory damages, but under the records the court held that exemplary damages were not allowable without evidence of malice. But such author-

ities do not sustain the position of defendant that malice is always a requisite in the award of exemplary damages.

In Williamson v. Western Stage Co., 24 Iowa 171, 172, supra, cited by defendant, there was no evidence of malice, but a judgment for exemplary damages was affirmed. Speaking for the court, Justice Cole said: "The point made in argument is, that the damages [$375] are clearly exemplary and excessive, since the evidence does not show that the plaintiff lost a single day of time or expended over two dollars for remedies on account of his injuries; and that exemplary damages could not properly be awarded, because there was no proof of fraud, malice, *gross negligence* or oppression on the part of defendant or its agents or servants. The counsel for appellant states the law of damages correctly. But the plaintiff in his petition claims that there was *gross negligence*, and *there was some proof tending to show this* —such as sending a driver who had never driven over the road before, and that, too, on a very dark and stormy night; his getting out of the road, and for that reason running over a large stump, causing the coach to upset suddenly, and other facts. At all events, it was a question of fact for the jury to determine, and upon which, under the evidence in this case, their verdict, although it may be different from what we would have found, is, nevertheless, under the well-settled rule of law, conclusive upon us on appeal." (Italics ours.)

In Frink & Co. v. Coe, 4 (Greene) Iowa 555, 61 Am. Dec. 141, plaintiff, while a passenger in a public stagecoach was injured because of the gross negligence of its proprietor in the employment of a known drunken driver, who was in charge of the vehicle. There was a verdict and judgment for plaintiff. The court instructed that the proprietors of stagecoaches as common carriers of passengers for hire were responsible for all injuries to passengers, which could have been prevented by human care and foresight. This court, in affirming the judgment and approving the instruction, said at page 558, the "doctrine is especially appropriate to a level prairie country, where nearly every accident may be traced to drunken or grossly careless drivers." The court refused a requested instruction of defendant that no matter whether the jury believed the driver to have been drunk or sober,

the plaintiff was entitled only to the actual damages proved, and could not recover exemplary damages unless he proved the acts of defendants to have been intentional and designed. The court said (page 559): "In a case of gross negligence on the part of a stage proprietor, such as the employment of a known drunken driver, and where a passenger has been injured in consequence of such negligence, we think exemplary damages should be entertained. * * * If a stage proprietor or carrier is guilty of gross negligence, it amounts to that kind of gross misconduct which will justify a jury in giving exemplary damages, even where an *intent or design* to do the injury does not appear. The reason and necessity for this rule is becoming yearly more apparent. The consequences of such negligence on the part of carriers is becoming more and more appalling."

If it was sound and salutary law in the early days of Iowa to award exemplary damages in the prevention and the punishment of gross negligence of those operating common carriers on the public highways, there should be no relaxation in such enforcement now, when the casualties of killed and injured from motor traffic, many of which are caused by drunken and grossly negligent operators, have indeed become appalling and are increasing in number each year.

The defendant in the case before us was not only "very intoxicated", according to the testimony of the highway patrolman, and by his admission was intoxicated at the time of the collision, but for approximately nine miles just preceding that event, part of which was through the main business street of the city of Osage, he had been operating his automobile while in that drunken condition in a wanton, reckless and grossly negligent manner. He was a highly dangerous menace to the safety of the persons or property of any user of that highway during that time. He violated section 321.281 of the Iowa Code of 1950 in operating his motor vehicle on the public highway, and also violated section 321.283 of said Code by driving his vehicle "in such manner as to indicate either a willful or a wanton disregard for the safety of persons or property", and was thereby "guilty of reckless driving." At or about the east corporate limits of Osage, a motor vehicle, a semitrailer, barely avoided a collision with defendant's car, by leaving the pavement. About noon on

Thursday, the day of the collision, he and his companion left Nora Springs, in Floyd County, Iowa, and drove to Austin, Minnesota. It was on the return trip that the collision took place. The highway patrolman in speaking of the liquor in defendant's car said "it was Minnesota beer." Just when defendant became intoxicated does not appear, but his drinking and his operation of the car while intoxicated was of his own volition.

In Miller v. Blanton (April 12, 1948), 213 Ark. 246, 210 S.W.2d 293, 3 A. L. R. 2d 203, involving two cases in which both plaintiffs were injured in a collision of the car in which they were riding, with the car of defendant Miller, a verdict was returned in favor of Dorothy Blanton for $1000 compensatory and $500 punitive damages, and of M. W. Blanton for $500 compensatory and $500 punitive damages. In affirming the judgments entered, the Supreme Court of Arkansas said at pages 248 to 251 of 213 Ark., pages 294 to 296 of 210 S.W.2d:

"In the absence of proof of malice or willfulness, before punitive damages may be awarded, it must be shown that there was on the part of the tort-feasor a 'wanton disregard of the rights and safety of others.' Texarkana Gas & Electric Light Co., 59 Ark. 215, 27 S.W. 66, 68, 43 Am. St. Rep. 30. * * *

"The evidence showed that Miller, after drinking intoxicating liquor to the extent that his talk and his walk were noticeably affected, and to the extent that, according to his own statement, he was 'half drunk', entered his car and sought to drive it over an improved state highway. In doing this he violated the criminal laws of this state (§6707, Pope's Digest).

"When Miller imbibed alcoholic liquor he knew that he was taking into his stomach a substance that would stupefy his senses, retard his muscular and nervous reaction, and impair, if not destroy, the perfect co-ordination of eye, brain and muscles that is essential to safe driving. After Miller voluntarily rendered himself unfit to operate a car properly he undertook to drive his automobile, a potentially lethal machine, down a well traveled highway. His conduct in doing this was distinctly antisocial, and the jury was amply authorized in saying by their verdict that he was exhibiting a 'wanton disregard of the rights and safety of others.' * * *

"Appellant Miller testified that a charge of 'reckless driving' was filed against him as a result of this collision and that he pleaded guilty to this charge. The offense of 'reckless driving' is thus defined by §6708, Pope's Digest: 'Any person who drives any vehicle in such a manner as to indicate either a willful or a wanton disregard for the safety of persons or property is guilty of reckless driving.' This testimony as to appellant's plea of guilty was competent as showing a deliberate declaration against interest by said appellant. 20 Am. Jur. 545. It therefore appears that the said appellant formally admitted that on the occasion of appellees' injury he was guilty of the very conduct that, under the rule laid down in all the decisions, authorizes the imposition of punitive damages."

There was a dissent, in which two other justices joined, that while Miller was grossly negligent when he drove his car in an intoxicated condition, his conduct did not justify the awards of punitive damages.

We are in full accord with the majority opinion.

In Ross v. Clark, 35 Ariz. 60, 68, 274 P. 639, 642, recovery of punitive damages against a drunken driver was affirmed. The court said: "As to the punitive damages, we do not think them too large, nor do we think them unjustified by the facts. * * * It is made a criminal offense for a person to drive an automobile on the public highways of this state while in an intoxicated condition. The jury fixed the defendant's penalty pretty high, but we think the example and warning to drunken or intoxicated operators of automobiles just and wholesome, and that it should not be disturbed by us." The action was brought by a husband and wife for personal injuries growing out of an automobile collision that occurred on the streets of Prescott. It was alleged that defendant in an intoxicated condition was driving at a speed of 50 to 60 miles an hour when he lost control of his car and wantonly and culpably and with utter disregard of the consequences to the life and limb of plaintiffs crashed into plaintiffs' car which was on its proper and right side of the street. The action was brought jointly by plaintiffs under the Arizona Community Property Law, permitting joint judgments to husband and wife. Actual damages of $15,000 and punitive damages of $5000 were prayed

for. A verdict was returned for $12,000 actual and $3000 punitive damages. The supreme court modified the judgment by giving plaintiffs the option of remitting $5000 of the compensatory damages, and awarding the wife $6000 compensatory damages, and the husband $1000 compensatory damages, and $3000 for punitive damages jointly, without designating the division thereof between them.

With reference to the meaning of the term "reckless" as used in the two criminal sections of the 1950 Code of Iowa mentioned hereinbefore, this court in Cerny v. Secor, 211 Iowa 1232, 1237, 234 N.W. 193, 195, said: "The court charged that the term is a stronger one than negligent operation or want of reasonable care; that its conduct indicates an indifference to the consequences of action, and constitutes wanton misconduct; that it signifies the driving of an automobile carelessly and heedlessly, in willful or wanton disregard for the rights of others; and that it may import a heedless disregard for obvious consequences * * * ."

██ This definition or description of reckless, wanton misconduct and heedless disregard of obvious consequences and the rights of others is applicable in every respect to the conduct of the defendant at bar. But his conduct was still more reprehensible and culpable because of his intoxication. As the Honorable Tom Boynton said in overruling defendant's motion to strike "Par. 2a" from each division of the petition: "* * * That for a drunken man to attempt to operate a motor vehicle on a public highway in violation of a statute intended to protect others is itself the equivalent of gross and culpable negligence."

██ There is no merit in defendant's contention that there must be malice in a tort-feasor's conduct in order to recover punitive damages against him. It is true that malice is often an element in the allowance of such damages, but it is not an essential requisite to every judgment awarding them. In addition to Williamson v. Western Stage Co., 24 Iowa 171, and Frink & Co. v. Coe, 4 (Greene) Iowa 555, 61 Am. Dec. 141, this court has repeatedly so held. In Cochran v. Miller, 13 Iowa 128, 131, the plaintiff sued the defendant, a doctor, for his malpractice in treating plaintiff for his ailment, and obtained a judgment. In affirming it this court said:

"The following instruction, given at the request of plaintiff, was objected to: 'If you further find that the contraction and scar, and deformity of the arm of plaintiff, was occasioned by the improper treatment of plaintiff by defendant, and the application of improper remedies, then you are not restricted to the actual damages plaintiff has sustained, but may give such further damages as, in your judgment, would be proper under the circumstances of the case.' Plaintiff seeks to recover of defendant, not alone for the nonfulfillment of the contract, *but for his gross negligence* in the treatment of the disease which he had undertaken to treat. If there was such negligence and inattention (all of which the court had previously explained), then the instruction was certainly not objectionable." (Italics ours.)

In Stricklen v. Pearson Construction Co., 185 Iowa 95, 97, 169 N.W. 628, the court speaking of the allowance of exemplary damages, said: "If the jury or court, in any given case, goes beyond that measure of recovery [compensatory damages], and increases the amount found in his favor by an allowance of exemplary damages, it is not because they are needed to make him whole, but because the wrongful act of which he complains has been done in malice, *or in such highhanded or reckless disregard of duty that the award is thus increased, by way of punishment or example.*" (Italics ours.)

This language was quoted in Kuiken v. Garrett, supra, 243 Iowa 785, 800, although in that case punitive damages were awarded because of malice.

Morgan v. Muench, 181 Iowa 719, 729, 730, 156 N.W. 819, 823, was a breach of promise action, in which judgment for plaintiff was affirmed. Defendant argued that there could be no malice imputed to him. This court said: "To constitute malice, it is not necessary that there should be hatred or ill will, or malice in that sense. *But the authorities hold that wantonness or the willful disregard of the rights of others may constitute legal malice.* The law is settled in Iowa that exemplary damages are allowable in cases of tort of this character * * *." (Italics ours.)

If the conduct complained of is wanton or in willful disregard of the plaintiff's rights and therefore legal malice, it is

immaterial how it is designated, as the conduct, itself, justifies the allowance of punitive damages.

In Reutkemeier v. Nolte, supra, 179 Iowa 342, 351, it is held that the authorities are practically uniform in sustaining cases of wantonness and depravity.

In Verwers v. Carpenter, 166 Iowa 273, 283, 147 N.W. 742, 745, plaintiff sued defendant for actual and exemplary damages for his seduction of her. Judgment for plaintiff was affirmed. Defendant complained that there was no evidence that the proposal of marriage was fraudulently or maliciously made. With respect thereto, this court said: "Strictly speaking, in a case of this kind it is not a question of malice. The act of seduction contemplates fraud, deceit, and bad faith. It is necessarily willful, and exemplary damages may be recovered, regardless of the existence or nonexistence of the malice of defendant."

Exemplary damages are allowable, as said: in White v. Spangler, 68 Iowa 222, 225, 26 N.W. 85, 87, "for a wrongful act willfully or wantonly or maliciously committed"; in White v. International Text Book Co., supra, 164 Iowa 693, 695, 146 N.W. 829, 830, where the wrong was "malicious, oppressive, wanton, willful, or reckless"; in Fitzgerald v. Chicago, R. I. & P. R. Co., 50 Iowa 79, 81, the words used are "malice or wantonness"; in Jeffries v. Snyder, 110 Iowa 359, 367, 81 N.W. 678, 681, exemplary damages were not allowed because "neither malice, fraud, *nor gross negligence* is alleged or proven; and these, or one of them, is ordinarily an essential ingredient of any such claim." (Italics ours.) In each of these cases the words descriptive of the conduct complained of were disjunctively stated.

Had the plaintiff, in the appeal before us, or any of the occupants of the car in which she was riding, died as a result of the collision, the defendant would have been chargeable with manslaughter, since the cause of death, as stated in State v. Graff, 228 Iowa 159, 172, 290 N.W. 97, 99, would have been the "wanton and reckless disregard and indifference for the safety of other persons who might reasonably be expected to be injured thereby"; and, as said in State v. Kellison, 233 Iowa 1274, 1277, 11 N.W.2d 371, 373: "Involuntary manslaughter may be committed where death results from drunken driving *or* from wanton and

reckless operation of an automobile. (Many courts use the term 'gross and culpable negligence.')."

The jury by its verdict found "that defendant drank intoxicating liquor and became intoxicated and then drove his car while so intoxicated as to make his conduct, in driving upon a public highway, wanton, reckless and grossly negligent", as permitted by the able trial court's Instruction No. 12. The instruction, verdict and judgment have the support of the decisions of this court. We find no basis for reversal in defendant's assignments of error. The judgment is therefore—Affirmed.

All JUSTICES concur.