**In the Matter of TEXAS PORTLAND CEMENT COMPANY, Debtor.**

**No. 1606.**

United States District Court E. D. Texas, Beaumont Division.

April 20, 1962.

Sidney A. King, Beaumont, Tex., for Stockholders' Protective Committee.

SHEEHY, Chief Judge.

The cement plant of Texas Portland Cement Company, the Debtor (one of the smallest in capacity in the United States), began operations in March of 1957. On July 7, 1958, these corporate reorganization proceedings were instituted, and since that time the plant of Debtor has been operated by Trustees, reporting the financial results of such operations to this Court each month. The plant of Debtor has operated longer under the direction of the Court than it did under the direction of its original management who promoted the corporation.

In addition to the regular monthly accountings, the Trustees have from time to time during the course of these proceedings filed petitions requesting authority to expend funds for the accomplishment of certain betterments, modifications and replacements of the Debtor's plant and equipment, each of which has proceeded to hearing, during the course of which the Court has heard testimony upon practically every phase of the operation of Debtor's plant as a unit of the cement industry.

Pursuant to direction of this Court an exhaustive investigation into the fiscal affiairs of the Debtor was conducted by the Trustees. As a result of this investigation objections were leveled to certain indebtedness of the Debtor and the validity of substantial quantities of stock was challenged. By orders of this Court during the course of these proceedings the indebtedness of the Debtor has been substantially reduced. As a result of a suit filed by the Attorney General of the State of Texas after institution of these reorganization proceedings, and by orders of this Court, the outstanding stock of the Debtor has been reduced during the reorganization proceedings by a total of 216,-174 shares.

After making all adjustments to reflect the results of reduction of indebtedness during the course of these proceedings, the operations of the Debtor still fail to

Ballinger Mills, James H. Ammerman, of McLeod, Mills, Shirley & Alexander, Galveston, Tex., for trustees.

reflect a reasonable profit. This is true in spite of the achievement of a rate of cement production substantially in excess of the designed capacity of the Debtor's plant. It would appear that if the capacity of the plant could be substantially increased its operations would result in a normal profit after all charges. This, however, would require capital expenditures inappropriate to these proceedings.

Although the indebtedness has been reduced and substantial amounts have been paid on same during the course of the operations by the Trustees, internal reorganization of the Debtor corporation by mere re-arrangement of its existing indebtedness without the injection of substantial additional capital funds does not appear to be either practical or feasible. The plant has been operated by the Trustees during these proceedings in a most efficient and economical manner yet the results reflect gradual and uncontrollable increases in the cost of manufacturing and selling cement. Competitive conditions control the selling price of the cement produced and during the period of these proceedings the selling price has not increased commensurate with cost increases. Substantial capital expenditures have been necessary during these proceedings to bring the plant to its present high rate of efficiency and it must be assumed that a substantial amount would be required annually to maintain this efficiency by keeping up with technological advances in the cement industry. It must also be recognized that the impact of any of numerous hazards, both natural and economic, to which all business ventures are exposed, and to which the Debtor, because of its limited capacity is particularly vulnerable, could result in a financial crisis that would eliminate all possibility of realization by the stockholders of any part of their investment and cause partial loss to the unsecured creditors. In my opinion, the conclusion of these proceedings by a so-called internal reorganization would result in an uneconomic, undercapitalized enterprise lacking managerial direction.

The Trustees have proposed a Plan of Reorganization under which the physical assets of the Debtor would be sold to Alpha Portland Cement Company. On February 26, 1962, at Beaumont, Texas, the Court heard testimony concerning the proposed Plan. This hearing was held after notice to all interested parties, pursuant to order of this Court and as provided by law. The notice to interested parties solicited suggestions, amendments, and objections to the Plan of Reorganization proposed by the Trustees. No suggestions or amendments were proposed by any interested party and no objections were made. At the conclusion of the hearing this Court, deeming the Plan worthy of consideration, took same under advisement and directed submission of the Plan to the Securities and Exchange Commission for examination and report by April 17, 1962. The hearing on the Plan of Reorganization was adjourned to April 20, 1962. The Securities and Exchange Commission has now carefully examined the proposed Plan and reported that in its opinion the Plan was fair, equitable and feasible.

The Plan provides for payments by Alpha in cash and by issuance of 4½% debentures of Alpha, having a maturity of ten years. In addition Alpha would assume certain indebtedness of Debtor. The proceeds of the sale plus retained assets and the amount of liabilities assumed would provide the equivalent of a fund of approximately $4,800,000.00 for distribution to creditors and stockholders.

It is anticipated that after setting aside reserves in cash for the payment of all administrative expenses the creditors will receive all interest, where entitled to interest, at the rate of 4½% per annum from July 7, 1958, and at least 10% of the principal sum of indebtedness in cash, the balance in Alpha debentures at face value, and stockholders will receive an initial distribution of $2.00 in face value of Alpha debentures for each share of stock owned in Texas Portland Cement Company. According to present estimates, after the payment of all administration expenses and the expiration of

the time for further claims on the part of stockholders, an additional cash distribution will be made to stockholders of a sum, the amount of which per share of stock cannot now be precisely determined. Under most optimistic estimates this subsequent distribution will not exceed 50¢ per share.

From testimony heard it appears that the Alpha debentures will carry an investment quality rating and have good marketability. Alpha is an established domestic cement producer with an established record of earnings progress and modest senior indebtedness represented entirely by bank loans. Alpha has the means to render the plant of the Debtor an economical unit by increasing its productive capacity. Its proposal recognizes that these corporate reorganization proceedings have accomplished quite successfully the preservation of the value of a distressed business through the continuance of that business as a going concern. If the protection of these proceedings had not been afforded to Debtor the equities of its stockholders would undoubtedly have been completely wiped out, and the creditors, except for those having adequate security, would have sustained substantial losses. The proposed Plan provides for payment of all types of creditors of the Debtor and salvages a substantial part of the equities of its stockholders.

As a result of the investigation conducted by the Trustees under orders of this Court, suit was filed against certain of the officers and directors of the Debtor seeking recovery of damages because of their mismanagement of the corporate affairs. Pursuant to the Trustees' recommendations, orders have been entered approving compromises of the cause of action against certain of these officers and directors. These compromises have resulted in reduction of the indebtedness claimed by certain of the officers and directors, and in the cancellation of 40,683 shares of stock held by officers and directors and those closely associated with them. Additional shares of stock of certain of the officers and directors were canceled as a result of the challenge by the State of Texas that this stock was watered stock.

The proposed Plan of Reorganization seeks to subordinate the stock of four directors with whom the Trustees were unable to conclude satisfactory settlements. These directors, constituting in the Plan "Subordinated Class 7", would receive nothing for their stock until the remaining stockholders, constituting "Class 6" in the Plan, had received a distribution of at least $5.00 per share. Since it is obvious under the Plan that there will not be sufficient funds or debentures available to make a distribution amounting to $5.00 per share to stockholders in "Class 6", the effect of subordination sought would be tantamount to cancellation of the shares.

Acting within the framework of the Bankruptcy Act this Court has the power to subordinate the stock claims of these directors to other claims if the conduct of these directors has been negligent to the degree that it constitutes a breach of their fiduciary duty in the management of the corporate affairs. Taylor v. Standard Gas & Electric Company, 306 U.S. 307, 618, 59 S.Ct. 543, 83 L.Ed. 669, and Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281. The Court, after having duly considered the evidence presented, finds that the directors constituting "Class 7" under the Plan of Reorganization proposed, failed to exercise that degree of care and diligence in the discharge of the business of the Debtor which a person of ordinary prudence and business acumen should have exercised, and that in some instances the evidence reveals acts by these directors amounting to a reckless disregard of the interests of the great majority of the stockholders of the Debtor.

Accordingly, the Court having considered the proposed Plan of Reorganization and all of the testimony and evidence presented in connection therewith, including that touching upon the proposed subordination, and having considered the report of the Securities and

Exchange Commission, finds that said Plan of Reorganization of the Debtor, as amended and presently submitted herein, complies with the provisions of Sec. 216 of the Act of Congress relating to Bankruptcy, 11 U.S.C.A. § 616, and is fair, equitable and feasible.

It is, therefore, by the Court ORDERED:

1) That said Plan for the Reorganization of the Debtor, as amended, submitted and filed herein by the Trustees, be and the same hereby is approved;

2) That the summary of said Plan attached hereto as Exhibit A be and the same hereby is approved as the summary required by Sec. 175(1) of the Bankruptcy Act, 11 U.S.C.A. § 575(1).

3) That on or before April 26, 1962, the Trustees shall cause to be transmitted by mail to each creditor and stockholder of the Debtor whose claim has been filed herein and allowed, and who is affected by the Plan, at the address appearing upon the Debtor's books or otherwise known to the Trustees, and to the other interested parties of record, the following:

a) A copy of said Plan together with a summary thereof attached hereto as Exhibit A;

b) A copy of instructions attached hereto as Exhibit B;

c) A copy of notice to creditors and shareholders pursuant to Sec. 175 of the Bankruptcy Act, attached hereto as Exhibit C;

d) A copy of the report of examination of the Plan filed by the Securities and Exchange Commission herein;

e) A form for acceptance of the Plan, attached hereto as Exhibit D;

f) A copy of this opinion and order, less the Exhibits hereto;

g) A copy of the report of the Stockholders' Protective Committee on the Trustees' Plan filed herein.

4) That on or before April 26, 1962, the Trustees shall mail or cause to be mailed, by certified first class mail, postage prepaid, two copies of said Plan and copies of this opinion and order and of the instruments attached hereto and referred to as Exhibits, to the following:

Secretary of the Treasury,
Washington, D. C.

Securities and Exchange Commission,
Washington, D. C.

Securities and Exchange Commission,
105 West Adams Street
Chicago 3, Illinois

Director of Internal Revenue,
Austin, Texas.

Attorney General of the State of Texas,
Austin, Texas

Stockholders' Protective Committee,
c/o Honorable Sidney A. King
American National Bank Building
Beaumont, Texas

5) That May 16, 1962, be and the same is hereby fixed as the day and the time within which creditors and stockholders and other interested parties affected by said Plan may accept the same in writing by execution of the Acceptance Form and delivery of same to the Trustees on or before such date.

6) That the Trustees herein shall file with the Court not later than May 17th, 1962, their report of acceptances of said Plan, and shall mail a copy thereof to those persons who have appeared of record and are designated in Paragraph 4) hereof.

7) That May 21, 1962, at 9:30 A.M., in the United States District Courtroom, Post Office Building, Tyler, Texas, be and the same hereby is fixed as the time and place of:

a) A hearing on the Trustees' report of acceptances said Plan and on any objections which may be made to the acceptances;

b) A hearing for the consideration of the confirmation of said Plan if accepted by the creditors and stockholders and other interested parties, and of such objections as may be made to the confirmation of said Plan;

c) A hearing pursuant to Sec. 236(2) of the Act of Congress relating to Bank-

ruptcy, 11 U.S.C.A. § 636(2), if confirmation of said Plan is refused.

8) That the said hearings may be adjourned from time to time without further notice to the Debtor, creditors, stockholders, and other parties in interest, other than the announcement in open Court at the hearings of the adjourned date or dates of the hearings.