**C. M. KIRTLEY, Trustee in Corporate Reorganization Proceedings of Automatic Washer Company, Plaintiff,**

v.

**BANKERS LIFE & CASUALTY COMPANY, Defendant.**

Civ. No. 4–961.

United States District Court
S. D. Iowa,
Central Division.

Aug. 30, 1961.

W. Z. Proctor, Howard A. Steele, James L. Rogers, and H. M. Coggeshall

(of Bradshaw, Fowler, Proctor & Fairgrave), Des Moines, Iowa, for plaintiff.

S. David Peshkin (of Bridges & Peshkin), Des Moines, Iowa, for defendant.

STEPHENSON, Chief Judge.

This matter is before the Court on the defendant's motion for a judgment notwithstanding the verdict or for a new trial under Federal Rule of Civil Procedure 50, 28 U.S.C.A. Upon request of the defendant hearing on defendant's motion was postponed until after a transcript of the trial could be prepared.

The plaintiff, C. M. Kirtley, is Trustee of Automatic Washer Company in corporate reorganization proceedings under Chapter X of the National Bankruptcy Act, 11 U.S.C.A. § 501 et seq. While jurisdiction is alleged on grounds of diversity of citizenship, diversity need not exist in suits filed by a Trustee in corporate reorganization under Chapter X of the Bankruptcy Act. 11 U.S.C.A. §§ 11, sub. a, 46, 502. Williams v. Austrian, 1947, 331 U.S. 642, 67 S.Ct. 1443, 91 L.Ed. 1718.

The plaintiff (hereinafter referred to as Automatic) brought suit against the defendant (hereinafter referred to as Bankers) claiming that Bankers was attempting to work a scheme whereby Bankers, through its subsidiary, Illamex, Inc., would acquire 492,500 shares of Automatic stock, purportedly worth no less than $1,267,500, for a cost to Bankers of only $250,000; and in attempting this scheme Automatic was damaged in that Bankers caused Automatic to sell $500,000 worth of stock Automatic held, for a note and mortgage worth only $65,000.

Automatic claims Bankers' scheme would operate as follows:

1. Bankers would acquire the majority stock in Automatic and thereby become its dominant and controlling stockholder.

2. Bankers would take complete control of Automatic by obtaining offers to resign from all the officers and directors of Automatic except John W. Chamberlin, President, who would be retained as a "front" for Bankers.

3. Bankers would then cause Automatic to acquire from a company named Martin Development Corporation, a 90 day $225,000 note and mortgage on Schuster Oil and Gas Corporation properties. To pay for this note and mortgage, Bankers would have Automatic transfer to Martin Development Corporation 25,000 shares of Bellanca stock, owned by Automatic and having a value of $500,000.

4. Bankers would then have Automatic cause Schuster Oil and Gas Corporation to transfer its property covered by the mortgage to Automatic, who would then cancel the mortgage and give Schuster 492,500 shares of Automatic.

5. Finally, Bankers would have its subsidiary, Illamex, Inc., buy the Automatic shares from Schuster Oil and Gas Corporation for $250,000 cash, which was less than the fair value of that stock.

Automatic claims that Bankers in fact did consummate the first three steps in its scheme, damaging Automatic when it caused Automatic to give the Bellanca stock, allegedly worth $500,000 for the Schuster note and mortgage, allegedly worth only $65,000. As a result thereof, Automatic contends it suffered actual damages to the extent of $435,000. Automatic further sought exemplary damages in the amount of $1,000,000.

Bankers completely denies the existence of any plan or scheme on its part, or conspiracy or fraud in any of its dealings with or concerning Automatic. Bankers states that in fact Automatic had been negotiating with Martin for the acquisition of the Schuster note and mortgage in March of 1956, long before Bankers became involved in Automatic. Bankers further claims that at the time Bankers purchased the controlling interest in Automatic, they were led to believe by Automatic and Bellanca, and in fact did believe, that Automatic already owned the Schuster gas and oil properties. Bankers, therefore, asserts that under these facts it is apparent that they exerted no influence and had nothing whatsoever to do

with the transaction by which Automatic acquired the Schuster note and mortgage in exchange for the Bellanca stock. Bankers further denies the allegations of Automatic that the Schuster note and mortgage were only worth $65,000, claiming that the value of the note and mortgage, under the circumstances, was equal to, if not more than the value of the 25,000 shares of Bellanca stock traded for it.

Bankers' motions for directed verdicts at the close of Automatic's evidence and at the close of all the evidence were overruled. The jury returned a verdict for Automatic for $1,056,250. Of this amount, $406,250 was for compensatory damages and $650,000 was for exemplary damages. At the request of Bankers, the following interrogatory was submitted to the jury:

> "Did Bankers Life and Casualty Company, on or about May 11, 1956, cause Automatic Washer Company to acquire from Martin Development Corporation a written note and mortgage in the amount of $225,000 in exchange for 25,000 shares of Bellanca stock?"

The jury answered the interrogatory in the affirmative. The only exception taken to the Court's instructions was Bankers' exception to submitting the issue of exemplary damages to the jury.

In substance Bankers now contends the Court should have granted its motion for a directed verdict at the close of Automatic's evidence or at least at the close of all the evidence for the reason Automatic's evidence was insufficient as a matter of law to make a question of fact for the jury. Bankers further contends the verdict was against the weight of the evidence. In addition, Bankers contends that the issue of exemplary damages should not have been submitted to the jury and that in any event the exemplary damages assessed by the jury were so grossly excessive under the evidence that it indicates passion and prejudice on behalf of the jury, and in the alternative that under the evidence, the damages awarded by the jury were excessive.

It is the view of this Court that there was sufficient evidence to make a question of fact for the jury and that the verdict was not against the weight of the evidence. The Court further holds that in view of the evidence submitted the compensatory damages awarded were not excessive. The submission of the issue of exemplary damages to the jury and the amount of exemplary damages awarded require further discussion.

The Court instructed the jury that if they found Automatic was entitled to recover compensatory damages they could consider whether or not to allow Automatic exemplary damages. Instruction 10 covering the issue of exemplary damages was given as follows:

> "If you have found that the plaintiff is entitled to recover compensatory damages under all the instructions heretofore given you, you may then consider whether or not you will allow the plaintiff what is known in law as punitive damages.

> "You are instructed that the law permits, but does not require, a jury to allow punitive damages in certain cases if the jury finds that the act of the defendant causing damage to the plaintiff was an improper, malicious or wrongful act, committed with no justification, which act results in injury or damage to the plaintiff.

> "Punitive damages are not compensatory in the ordinary sense, but are allowed by way of punishment to restrain the defendant and others from the commission of like acts in the future.

> "In this case if you have found all the facts necessary to allow the plaintiff to recover compensatory damages, as you have been previously instructed, you may then also allow the plaintiff punitive damages if you find that the acts of the defendant which caused the damage to the plaintiff were done maliciously, or that those acts were wrongful acts and they were done with disregard to the rights of the plaintiff, or disregard

to the duty the defendant may have had to the plaintiff.

"In determining the amount of punitive damages, if any, to be awarded the plaintiff, the Court can give you no exact rule, but you should be guided by your careful and well-considered judgment and allow, if any, such an amount and such only as you shall find the plaintiff entitled to receive in addition to his actual damages under all the facts and circumstances as shown by the evidence and under these instructions.

"In no event may you allow the plaintiff, as punitive damages, more than $1,000,000, being the amount for which the plaintiff prays, but you are not to consider the mentioning of this figure to be any intimation by the court that this amount or any other amount should be awarded as punitive damages by you."

Bankers took no exception to the wording of the instruction (or any other instruction for that matter) but did object to submitting the question of exemplary, or punitive damages to the jury.

The question presented is whether Iowa law would permit an award of exemplary damages in such a situation. Bankers contends that " * * * the jury must find that the defendant must have been activated by actual malice rather than an implied malice inferred from the circumstances in order for an award of punitive damages to be allowed." Examination of recent Iowa authority upon the question shows this contention is without merit. Not only will implied malice inferred from the circumstances suffice, but malice itself does not always have to be shown. In Sebastian v. Wood, 1954, 246 Iowa 94, 66 N.W.2d 841, the Iowa Court stated:

"The opinions of this Court have always emphasized the thought that the purpose of exemplary damages was the punishment, and prevention of similar future offenses. The allowance of such damages is wholly within the function and province of the jury, to be granted or denied in the exercise of a wise discretion, *whether the moving cause be affected by malice, oppression, wantonness, recklessness, or gross negligence,* and if allowed, to fix the amount." (Emphasis added.) Id., 246 Iowa at page 101, 66 N.W.2d at page 845.

Concerning the defendant's contention and cited authority that malice is an essential element to the recovery of exemplary damages, the court continued,

"In these cases and others which might be cited, the question was whether the trespass, ejectment, or other act complained of, was with or without wrongful intent. There was evidence of unlawfulness or unnecessary force or negligence supporting an allowance of compensatory damages, but under the records the court held that exemplary damages were not allowable without evidence of malice. *But such authorities do not sustain the position of defendant that malice is always a requisite in the award of exemplary damages.*" (Emphasis added) Id., 246 Iowa, at page 101–102, 66 N.W.2d at page 845.

It is Automatic's contention that if malice has to be shown, "it would be sufficiently implied from defendant's intentional commission of this wrongful act motivated by desire for gain." In Connolly v. White, 1904, 122 Iowa 391, 98 N.W. 144, Justice McClain recognized the distinction between malice resulting from personal ill will, sometimes termed "express" malice, and "legal" malice which may result from "malice in fact" or "malice in law". The distinction between the two types of legal malice was indicated as follows:

"Malice in law is where malice is established by legal presumption from proof of certain facts, as in actions for libel, where the law presumes malice from proof of the publication of the libelous matter. Malice in fact is to be found by the jury from the evidence in the case. They may infer it from want of probable

cause. But it is well established that the plaintiff is not required to prove express malice, in the popular signification of the term, as that defendant was prompted by malevolence, or acted from motives of ill will, resentment, or hatred toward the plaintiff. It is sufficient if he prove it in its enlarged legal sense." Id., 122 Iowa at page 393, 98 N.W. at page 145.

In a slightly later discussion of the requirements of legal malice in Jenkins v. Gilligan, 1906, 131 Iowa 176, 179, 108 N.W. 237, 238, 9 L.R.A.,N.S., 1087 the Iowa Court stated, " * * * (T)he prosecution need not have been prompted by malevolence or any corrupt design, nor necessarily involve spite or hatred toward the person accused. It is enough if it be the result of any improper or sinister motive and in disregard of the rights of others." In Morgan v. Muench, 1917, 181 Iowa 719, 729–730, 156 N.W. 819, 823, the Iowa Court stated, "To constitute malice it is not necessary that there should be hatred or ill will, or malice in that sense. But the authorities hold that wantonness or the willful disregard of the rights of others may constitute legal malice." In Mendenhall v. Struck, 1929, 207 Iowa 1094, 224 N.W. 95, the Iowa Court in discussing the plaintiff's prayer for both compensatory and exemplary damages stated 207 Iowa at page 1099, 224 N.W. at page 97, "Malice does not necessarily mean spite or hatred, but it means the doing of an actual wrong, in itself without just cause or excuse." In Sebastian v. Wood, supra, 246 Iowa at 107–108, 66 N.W.2d at page 848, the Iowa Court stated, "If the conduct complained of is wanton or in wilful disregard of the plaintiff's rights and therefore legal malice, it is immaterial how it is designated, as the conduct, itself, justifies the allowance of punitive damages." In Amos v. Prom, D.C.N.D.Iowa 1953, 115 F.Supp. 127, Judge Graven summarized the Iowa law on this question as follows:

"The rule would seem to be: exemplary damages may be awarded where defendant acts maliciously, but malice may be inferred where defendant's act is illegal or improper; where the nature of the illegal act is such as to negative any inference of feeling toward the person injured, and is in fact consistent with a complete indifference on the part of defendant, liability for exemplary damages is not based upon the maliciousness of the defendant but is based, rather, upon the separate substantive principle that illegal or improper acts ought to be deterred by the exaction from the defendant of sums over and above the actual damage he has caused." Id., 115 F.Supp. at pages 136–137.

In view of the foregoing authorities it was proper to submit the issue of exemplary damages to the jury and Bankers' contention to the contrary cannot be sustained.

Bankers further contends that the exemplary damages assessed by the jury were so grossly excessive under the evidence that it indicates passion and prejudice on behalf of the jury, and in the alternative, that the damages awarded were excessive. The Court can recall no evidence introduced nor events occurring during the trial, and Bankers has called none to the Court's attention, which might have inflamed the jury. Likewise, there was no conduct on the part of any counsel calculated to overcome the fair mindedness of the jurors. The jury began its deliberations on January 13, 1961 at 1:55 p. m. After an overnight recess they resumed their deliberations and returned their verdict on January 14, 1961, at 4:00 p. m. The Court finds no incident occurred during the trial of the case upon which there is any basis for the assertion that the verdict was a result of passion or prejudice on the part of the jury.

Even if there were no such incidents or events Bankers contends that the exemplary damages standing alone were so excessive as to indicate passion and prejudice on behalf of the jury, and in the alternative, even if passion and prejudice did not exist the damages awarded

by the jury were excessive. Exemplary damages are allowed " * * * as a punishment to the offender and as an example to others that such oppressive or malicious conduct has its additional penalties." Kuiken v. Garrett, 1952, 243 Iowa 785, 800, 51 N.W.2d 149, 158, 41 A.L.R.2d 1397, or " * * * as a punishment for the particular party involved and as a warning and an example to him in the future, and to all others who may offend in like manner." Sebastian v. Wood, supra, 246 Iowa at page 100, 66 N.W.2d at page 844.

It appears rather difficult to formulate a hard and fast rule as to what constitutes excessive exemplary damages. It has been suggested that the award of compensatory and exemplary damages must be within a certain ratio of each other. Examination of the Iowa cases shows this not to be an infallible guide. Compare International Harvester Co. v. Iowa Hardware Co., 1910, 146 Iowa 172, 122 N.W. 951, 29 L.R.A.,N.S., 272 ($40 compensatory damages and $300 attorney fees and $500 exemplary damages upheld) and Williamson v. Western Stage Co., 1867, 24 Iowa 171 ($2 compensatory damages and $373 exemplary damages upheld) with Sergeant v. Watson Bros. Transp. Co., 1952, 244 Iowa 185, 52 N.W. 2d 86 ($3,500 compensatory damages; $6,500 exemplary damages held excessive) and Sadler v. Bean, 1874, 38 Iowa 684 ($139 compensatory damages; $610 exemplary damages held excessive). None of the Iowa cases have involved consideration of such large exemplary damages as are found in the instant case. No Iowa cases have been called to the Court's attention wherein such a low ratio as the instant case presents (1.6 to 1) has been held excessive. In no event, however, is a ratio comparison a conclusive test.

■ Perhaps the best statement of the Iowa law on this question is found in Amos v. Prom, supra, 115 F.Supp. at page 131, wherein Judge Graven stated, "In Iowa exemplary damages ordinarily cannot be awarded unless there is a basis for compensatory damages, *and the amount of exemplary damages must be reasonably proportionate to the compensatory damages awarded.*" (Emphasis added.) The Iowa Court has stated many times that the assessment of exemplary damages is peculiarly within the discretion of the jury. E.g. Gregory v. Sorenson, 1932, 214 Iowa 1374, 242 N.W. 91; Brause v. Brause, 1920, 190 Iowa 329, 177 N.W. 65. However, this discretion is not unlimited. In deciding whether the verdict was so excessive as to show passion and prejudice on the part of the jury, the Iowa Court has stated, "The test is, not what amount the court would have allowed, but whether the verdict is so large or small, as the case may be, as to shock the conscience." Brause v. Brause, supra, 190 Iowa at page 337, 177 N.W. at page 68. This test of "conscionableness" has been most recently reiterated in Sergeant v. Watson Bros. Transp., supra, 244 Iowa at page 199, 52 N.W.2d at page 94.

■ Is the award of $650,000 exemplary damages so excessive and so shocking to the conscience as to show passion and prejudice on the part of the jury, or coupled with the compensatory damages, are the damages awarded by the jury excessive? Admittedly $650,000 is a large award. In deciding whether or not it is so excessive as to show passion and prejudice, consideration must be given not only to the amount of the compensatory damages awarded ($406,250) but also to all the evidence of Bankers' alleged scheme to acquire Automatic stock for $250,000, which, if successful, could have profited Bankers approximately $1,000,-000. In weighing the relationship between the two awards and all the evidence submitted, this Court cannot say the exemplary damages are so grossly excessive and shocking as to show passion and prejudice on the part of the jury, nor were the exemplary damages standing alone nor coupled with the compensatory damages, excessive.

Defendant's motion for judgment notwithstanding the verdict or for a new trial are therefore denied.