In the Matter of AUTOMATIC WASHER
COMPANY, Debtor.

No. 5-426.

United States District Court
S. D. Iowa,
Central Division.

Feb. 17, 1964.

———◇———

S. David Peshkin, and Wendell B. Gibson, Des Moines, Iowa, for Bankers Life and Casualty Co.

W. Z. Proctor, H. A. Steele and H. M. Coggeshall, Des Moines, Iowa, for C. M. Kirtley, Trustee.

Thomas B. Hart, J. Kirk Windle and William D. Scheid, Chicago, Ill., for Securities and Exchange Commission.

I. Harvey Levinson and Melvin E. Levinson, Chicago, Ill., for shareholders committee.

Eugene Davis, Des Moines, Iowa, and F. J. O'Hara, Jr., Washington, D. C., for respondent Olson Brothers, Inc.

STEPHENSON, Chief Judge.

This matter is now before the Court upon the proposal of the Trustee in a Chapter X reorganization proceedings (Chapter X of the National Bankruptcy Act, 11 U.S.C. § 501 et seq.) to subordinate the interests of certain shareholders.

The Debtor, Automatic Washer Company, is a Delaware Corporation which formerly had its principal place of business in Newton, Iowa, where it engaged in the manufacture and sale of electric washers. On November 2, 1956, an involuntary petition praying for reorganization pursuant to Chapter X was approved and the trustee appointed. On August 9, 1957 the trustee filed his report pursuant to Section 167 of Chapter X in which it was indicated that causes of action appeared to exist in favor of the Debtor against former officers, directors, controlling shareholders and other persons for mismanagement and other questionable transactions. A summary of this report was mailed to all creditors and shareholders. Thereafter, upon petition of the Securities and Exchange Commission the Court entered injunctions against all such persons and corporations restraining them from the sale or other disposition of common stock of the Debtor which they might hold. The injunctions were sought on the basis that the common stock held by these parties might be subject to subordination to the interests of public shareholders and that any disposition of shares held by them would dilute the interest of the public shareholders in any funds or securities which might later be distributed under any plan of reorganization. The order for injunction has been modified on several occasions but continued in force.

On October 2, 1957 the Trustee filed a plan for reorganization of the Debtor which provided for the subordination of the stock interests of named persons and corporations who had been guilty of mismanagement and other unlawful acts in the conduct of the business and affairs of the Debtor. The Court after hearing approved the plan reserving the right to determine the subordination issue at a later time if it were determined that funds remained for distribution to the stockholders. The plan was a liquidation plan and no continuity of corporate operation was contemplated. This plan was accepted by the requisite majorities and confirmed by the Court on February 22, 1958.

Distribution to creditors has been made under the foregoing plan and they have received 100% of their claims in cash. There now remains in the hands of the Trustee the sum of approximately $300,-000 for payment of the costs of administration and distribution to the common stockholders. The Trustee of Debtor now asks the Court to determine that the interests of certain named owners (those guilty of mismanagement and wrongdoing) of common stock be subordinated to the stock owned and held by stockholders generally (hereinafter referred to as public shareholders). Several of such named owners of stock have failed to appear and respond as directed, and are adjudged in default. A separate order of subordination with respect to them is being filed herewith. Two of the named owners of common stock of Debtor have appeared and resisted the application for subordination. One is Bankers Life and Casualty Company (hereinafter referred to as Bankers) which owns 642,000 shares; the other, Olson Brothers, Inc. successor to Bellanca Corporation (hereinafter referred to as Bellanca) owns 257,504 shares. There are approximately 2,154,292 shares of Automatic stock issued and outstanding. The contentions of each of said owners will be considered separately.

### BANKERS

■ Bankers obtained control of Debtor on or about May 8, 1956 and exercised

this control until the Court's jurisdiction attached to the Debtor. No useful purpose would be served by reviewing the fraud perpetrated by Bankers on the Debtor. It is adequately documented in the files and transcript of the cause in this Court entitled, Civil 4-961, C. M. Kirtley, Trustee, plaintiff v. Bankers Life and Casualty Company, D.C., 198 F.Supp. 30, defendant, where a jury returned a verdict in favor of the Trustee and against Bankers in the sum of $1,149,-759.12 on account of Banker's misconduct. The writer of this memorandum tried this cause and refused to grant a new trial. Kirtley v. Bankers Life and Casualty Company, D.C., 198 F.Supp. 30 (1961); affirmed, except that punitive damages in the sum of $650,000 were held excessive and ordered remitted. 307 F.2d 418 (8 Cir. 1962). Neither party petitioned for writ of certiorari to the Supreme Court of the United States, and the judgment was paid. Bankers now contends that since the Circuit Court ordered the punitive damages remitted and the Trustee filed such remittitur it cannot now be said that Bankers' conduct was fraudulent. Bankers' contention in this regard is completely without merit and will receive no further attention herein.

■ Bankers further contends that this Court is without power or jurisdiction to decree subordination herein and in that connection urges that although labeled a reorganization under Chapter X there was no reorganization but only liquidation and therefore the bankruptcy court has no jurisdiction to determine the interests of stockholders. This contention cannot be sustained.

■ A plan of reorganization may take the form of liquidation, 11 U.S.C. § 616(10); In re Chelsea Hotel Corporation, 246 F.2d 133, 134 (3 Cir. 1957); In re Lorraine Castle Apartments Bldg. Corp., 149 F.2d 55 (7 Cir. 1945). It is abundantly clear that a Court in reorganization proceedings is vested with equitable jurisdiction to hear and determine the relative priority of stockholders' rights. Taylor v. Standard Gas & Electric Co., 306 U.S. 307, 322–324, 59 S.Ct.

543, 550, 83 L.Ed. 669 (1939). The transactions of controlling shareholders, officers or directors with their corporations will be subjected to "rigorous scrutiny". Pepper v. Litton, 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939). Taylor v. Standard Gas & Electric Co., supra; In re Texas Portland Cement Company, D.C., 205 F.Supp. 159 (1962).

Bankers' contention that In re Kansas City Journal Post Co., 8 Cir., 144 F.2d 791 forbids subordination under the circumstances now before the Court is incorrect. Cf. Barlow v. Budge, 127 F.2d 440 (8 Cir. 1942). Bankers as dominant stockholder of Debtor wasted assets of Debtor for its own benefit to such an extent that a jury assessed excessive punitive damages. 307 F.2d 418, supra.

■■ In addition Bankers contends that having paid the compensatory damages awarded in the above mentioned litigation it cannot be further punished by subordination of its stock. Subordination is not a recovery for wrongdoing, it involves the exercise of the equitable powers of the bankruptcy court in making distribution of the assets of the Debtor. In Re Kansas City Journal-Post Co., supra. The judgment rendered Bankers was limited to the damages arising out of one transaction. The full extent of the injury arising out of the manipulations of the Debtor's affairs by Bankers is difficult to ascertain. Subordination to the public shareholders is fair and equitable. Unfortunately the amount available for distribution is comparatively small and the ultimate restitution to the public stockholders is slight.

### BELLANCA (Olson Brothers, Inc.)

Bellanca asserts that (1) it did not exercise actual control over the Debtor; (2) any wrongdoing which may have occurred was a result of the actions of Sidney L. Albert who held eighty percent (80%) of Bellanca's stock during the period in question and he has now been eliminated from any interest in Bellanca for all practicable purposes, thus the stockholders of Bellanca should not be made to suffer; (3) that having settled a law suit

with the trustee Bellanca should not be forced to respond again.

On December 23, 1955, Debtor's Board of Directors approved the following questionable contracts:

(a) A contract to purchase certain rubber machinery from one Joseph Abrams in exchange for 50,000 shares of Debtor's stock.

(b) A contract to purchase from Sidney L. Albert a note of Bellanca in the amount of $1,520,-000 in exchange for 305,000 shares of Debtor's stock.

(c) A contract to purchase 105,646 shares of N. O. Nelson Company stock from Bellanca in exchange for 950,000 shares of Debtor's stock and the $1,520,000 note purchased from Sidney L. Albert (referred to in (b)).

During the period from December 1955 to May 8, 1956 (all of the period material to the above contracts) Sidney L. Albert was President and controlling stockholder of Bellanca and Chairman of the Board and controlling shareholder of Pierce Governor Company, Inc. (hereinafter referred to as Pierce); Harry Blythe, Executive Vice-President of Bellanca was also a director of Pierce; during the same period John Chamberlin was President of Debtor and beginning in March 1956 was a Director of Pierce and Chamberlin held the proxy to vote Pierce' stock in Debtor in March 1956; Francis Purcell served during a portion of the period as a Director of both Debtor and Pierce; Pierce was the holder of 230,000 shares of stock of Debtor; Sidney Albert held 200,000 shares of Debtor stock personally; Sidney Albert's "finder" one Joseph Abrams held at least 100,000 shares of stock of Debtor; Louis Carmack, Vice-President of Debtor testified that in his opinion, Bellanca and Albert were in control of the Debtor during the entire period (December 1955 to May 8, 1956); Sidney Albert testified that all his dealings with Debtor were for Bellanca and as President of Bellanca.

In connection with contract (a) above, Abrams received his 50,000 shares from Debtor but Debtor never received any rubber machinery. See, Kirtley v. Abrams, 299 F.2d 341 (2 Cir. 1962); thereafter the trustee herein settled said cause at a fraction of the loss incurred; the foregoing 50,000 shares were part of a total of 100,000 shares of Debtor paid to Abrams by Bellanca as a finder's fee incurred by Sidney Albert and Bellanca for Abrams procuring the Debtor-Bellanca transaction wherein Bellanca obtained an additional 950,000 shares of Debtor on March 26, 1956.

In connection with contract (b) above, Sidney Albert received 305,000 shares of Debtor (200,000 February 21, 1956; 105,000 March 26, 1956) with a market value of $2,471,875 for a consideration of $975,000, representing a loss to Debtor of $1,556,875, of which at least $305,000 loss was due to the misrepresentation of Bellanca that its note to Sidney L. Albert was $1,220,000, when in fact it was only $915,000.

In connection with contract (c) above, Debtor paid to Bellanca $7,362,500 in market value of Debtor's stock (as revised April 6, 1956) and a note on which Bellanca claimed it owed $1,220,000, an aggregate of $8,582,500. Debtor received from Bellanca stock of Nelson having a value of no more than $1,250,000, and Bellanca stock having a market value of $2,075,000, or a total of $3,325,000.

■ The Court has discussed the financial manipulations involved in the foregoing contracts in a summary fashion because it is sufficient to show that Bellanca was the dominating stockholder of Debtor when these transactions took place. As such, it is Bellanca's burden to come forward and prove the good faith of the transaction and its fairness to Debtor. Pepper v. Litton, supra. Bellanca has offered no proof herein and thus must be held to have conceded this issue.

■ Bellanca's main contention appears to be that both it and Debtor were

dominated by Sidney Albert. However, the transactions with Debtor were undertaken in its behalf and for its benefit. When the initial agreement was modified on April 6, 1956, Bellanca was in fact the controlling stockholder of Debtor. The transactions summarized above were fraudulent as to the Debtor, for which Bellanca, as controlling stockholder and as fiduciary, should be subordinated under the principles hereinbefore discussed under Bankers. The fact that the trustee of Debtor settled with Bellanca does not effect the issue of subordination.

The most that shareholders may receive on liquidation appears to be twenty to thirty cents a share on their $1.50 par value stock. However, it appears that public shareholders should be limited to the par value of $1.50 per share. An order decreeing that the Debtor's shares of stock held by Bankers and Bellanca shall be subordinated to those held by public shareholders to the par value of $1.50 per share will be entered.