Hylton HARMAN, Trustee of the Estate of Coffeyville Loan and Investment Company, Inc., Debtor, Plaintiff,

v.

D. A. WILLBERN, Defendant.

No. KC–1963.

United States District Court
D. Kansas.

April 3, 1964.

Harold H. Harding, of Harding & Lowder, Kansas City, Kan., for plaintiff.

T. Richard Liebert, of Liebert & Liebert, Coffeyville, Kan., for creditors committee.

Grant Guthrie, Chicago, Ill., for Securities and Exchange Commission.

Paul A. Lamb, of Lamb & Lamb, Coffeyville, Kan., and Blake A. Williamson, of Williamson, Cubbison, Hardy & Cooke, Kansas City, Kan., for defendant.

ARTHUR J. STANLEY, Jr., Chief Judge.

On February 8, 1958, the defendant sold his majority stock interest in the Coffeyville Loan and Investment Company, Inc. (C. L. I. C.) to Donald Elbel or his associated companies. From that date until sometime in August or September, 1958, the defendant continued as director of C. L. I. C.

On the 17th day of July, 1959, the petition of C. L. I. C. for reorganization under Chapter X of the Bankruptcy Act was approved.

The plaintiff in this action, Hylton Harman, is the duly appointed, qualified and acting trustee in reorganization of the debtor corporation as the successor of Richard L. Becker, resigned.

Trustee Becker, claiming to have valid causes of action against the defendant, requested by an application for instructions that he be authorized and directed to file an action against the defendant. A conference to consider the trustee's request was held in chambers on June 17, 1961. Present were the trustee and his attorney, Mr. Willbern and his attorneys, the attorney for the creditors committee, and counsel for the Securities and Exchange Commission. Counsel for Willbern urged that the proposed action already was barred by the statute of limitations. The trustee and other interested parties took the position that it would not be barred until July 17, 1961. The trustee's application was taken under advisement and briefs were submitted.

In order to toll the statute, if it had not already run, Willbern, the trustee, and their respective attorneys entered into the following stipulation on July 10, 1961:

"(1) If, within sixty (60) days after a final judicial determination has been made as to whether or not said trustee should be directed to file any cause or causes of action against D. A. Willbern, the trustee shall file any such cause or causes of action against D. A. Willbern, any such cause or causes of action shall be deemed to have been filed not later than July 16, 1961, and to such extent said D. A. Willbern hereby waives the benefits and defense of any and all statutes of limitations from July 16, 1961 to the date any causes of action may be filed.

"(2) That except as provided in paragraph (1) above, the said D. A. Willbern does not waive the defense of any statute of limitations."

The court's memorandum of decision, attached as an appendix to this opinion, was lodged in the Chapter X proceeding on January 23, 1963. After hearing, the trustee's application for leave to file the complaint was granted on June 1, 1963. The latter date therefore is the date of the "final determination" as that term is used in the stipulation.

The complaint was filed July 1, 1963, and thereafter, on July 31, 1963, the trustee filed an amended complaint.

The amended complaint is stated in two counts or causes of action. The first count charges the defendant with negligence in selling a controlling interest in C. L. I. C. to Elbel without adequate investigation of Elbel's financial standing, thereby violating his duty to the company's depositors. The second count charges that the defendant negligently and intentionally violated, and caused the debtor corporation to violate, the banking code of the State of Kansas.

■ The defendant has filed a motion to dismiss both counts of the first amended complaint. At this point it should be noted that such motions are generally viewed with disfavor, considered drastic remedies, and are granted sparingly. Pond v. General Electric, 256 F.2d 825 (9th Cir. 1958), cert. denied, 358 U.S. 818, 79 S.Ct. 30, 3 L.Ed.2d 60; Acoustica Associates, Inc. v. Powertron Ultrasonics Corp., 28 F.R.D. 16 (E.D.N.Y.1961); 1A Barron and Holtzoff Federal Practice and Procedure, § 348 (Rules ed. 1960).

As to count one, the defendant advances two principal arguments for dismissal:

1. That the statute of limitations had run against any action or purported action as disclosed in the original complaint prior to May 27 or June 17, 1961.

2. That this court has no jurisdiction over the subject matter in that the Bankruptcy Act cannot confer jurisdiction where there is no diversity of citizenship between the parties.

The defendant contends that the first count, couched in terms of tort negligence, is controlled by the two-year period of limitations set out in Kan.G.S. 1949, 60–306, Third. D. A. Willbern was a named director of the debtor corporation until on or about September 4, 1958. Therefore, the defendant concludes, any action based upon Willbern's negligence as a director and filed more than two years later is barred by the running of the statute; and the execution of the stipulation tolling all statutes of limitations on July 10, 1961, did not save or revive an already barred cause.

■ In answer, the plaintiff contends that the state statute of limitations is tolled or extended by Section 11, sub. e of the Bankruptcy Act, as amended in 1938. (11 U.S.C.A. § 29, sub. e). Section 11, sub. e, in pertinent part provides:

"A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of filing of the petition in bankruptcy. * * * "

In the case of Chapter X proceedings, "the date of adjudication" is read as the date of the approval of the petition, here July 17, 1959. Dabney v. Levy, 92 F. Supp. 551( S.D.N.Y.1950); aff'd, 191 F. 2d 201 (2d Cir. 1951); cert. denied, 342 U.S. 887, 72 S.Ct. 177, 96 L.Ed. 665.

■ The cases cited by the defendant, supporting the proposition that the period of limitations set by state statute is determinative, construed the law as it existed prior to the 1938 amendment which made the above quoted provision effective. Nairn v. McCarthy, 120 F.2d 910 (7th Cir. 1941); Mellon v. Weiss, 270 U.S. 565, 46 S.Ct. 378, 70 L.Ed. 736 (1926). It is now well settled that a cause of action which arises under state law, and upon which the state period of limitation has expired after the date of adjudication, but within two years after that date, is extended by the two-year period provided in Section 11, sub. e since that period supersedes the state limitation. 1 Collier on Bankruptcy, ¶ 11.13 (14th ed. 1962).

■ The stipulation of July 10, 1961, caused the complaint filed July 1, 1963, to relate back as having been filed prior to July 17, 1961. The defendant's motion to dismiss the first count, on the ground

that it is barred by the running of the statute of limitations, is denied.

The defendant contends further as to count one that this court is without jurisdiction in this case because of the lack of requisite diversity of citizenship. In support of this assertion, he cites the cases of Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897 (1926); Harris v. First National Bank, 216 U.S. 382, 30 S.Ct. 296, 54 L.Ed. 528 (1910); Frank v. Vollkommer, 205 U.S. 521, 27 S.Ct. 596, 51 L.Ed. 911 (1907); De Friece v. Bryant, 232 F. 233 (E.D.Ky. 1916); In re Grissler, 136 F. 754 (2d Cir. 1905).

■■ The cited cases antedate the Chandler Act, passed in 1938, which provided, *inter alia,* that a federal district court has jurisdiction to hear and determine plenary suits filed by a trustee in reorganization proceedings under Chapter X, even though diversity of citizenship or other traditional and usual grounds for federal jurisdiction are absent. Williams v. Austrian, 331 U.S. 642, 67 S.Ct. 1443, 91 L.Ed. 1718 (1947); Hadden v. Small, 145 F.Supp. 387 (N.D. Ohio 1951); Kirtley v. Bankers Life & Cas. Co., 198 F.Supp. 30 (S.D.Ia.1961). Section 23, sub. b of the Bankruptcy Act (11 U.S.C.A. § 46) provides that suits brought by the receiver or the trustee can be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under the Act had not been instituted, unless by consent of the defendant. However, Section 102 of the Act (11 U.S.C.A. § 502) declares that Section 23 is not applicable to reorganization proceedings. The case at bar is a plenary suit brought by the trustee in a Chapter X reorganization proceeding, and this court has jurisdiction regardless of the citizenship of the parties. The defendant's motion to dismiss on this ground is therefore denied.

■ As to the second count of the amended complaint, the defendant urges that it is barred by the running of both the state and federal statutes of limitations. Willbern contends that by entering into the stipulation of July 10, 1961, tolling the statute, he did not waive his right to assert the bar of limitations as to any cause not embraced by the proposed complaint. And he claims that he was not put on notice of the charges in the second count until the amended complaint was filed in July of 1963.

The defendant calls attention to my memorandum of decision of January 22, 1963, in the bankruptcy proceeding (No. 1699-B-1, In the Matter of Coffeyville Loan and Investment Co., Inc.) attached as an appendix, where I made reference to what at that time was "the proposed complaint." It is his contention that such reference, coupled with subsequent remarks setting out in substance the allegations therein, had the effect of limiting the final complaint to be filed to only those specific charges of negligence and nonfeasance contained in the proposed complaint. I did not intend at the time that my remarks should be so construed; nor do I believe they should now be so construed.

The stipulation agreed to and signed by the defendant refers always to the filing of "any cause or causes of action." It does not in any way limit the trustee to those matters alleged in the proposed complaint.

Furthermore, the second count of the first amended complaint particularizes and sets out in detail the manner in which the trustee believes Mr. Willbern's actions were negligent, willful, and unlawful. It is one of several breaches of trust alleged. The claimed violation of the state banking laws was mentioned as early as August 1, 1961, when the trustee filed his brief relative to the suggested action against Willbern.

The defendant next asserts that count one should be dismissed because this court by approving the petition on July 17, 1959, held the debtor to be a private corporation and not a banking corporation. Also, the defendant asserts that, if C. L. I. C. is a banking corporation, it is not subject to the jurisdiction of the bankruptcy court. (Section 4 of the Act; 11 U.S.C.A. § 22).

The first of these two assertions presupposes a finding by this court in its approval of the petition that C. L. I. C. was, in every respect, not a banking corporation. The latter suggests that I now find that C. L. I. C. was a banking corporation for all purposes so that under Section 4 it would not be subject to the provisions of the Bankruptcy Act.

A finding by this court that C. L. I. C. was not a banking corporation does not import that it had never engaged in banking practices. And such a finding does not foreclose the trustee from alleging that D. A. Willbern had caused the debtor corporation to violate certain of the banking laws of Kansas.

Where the enterprise, because of some of its bank-like business practices and activities, is a kind of hybrid corporation, it may be simultaneously subject to the Bankruptcy Act and certain state banking laws. See In re Prudence Co., 79 F.2d 77 (2d Cir. 1935), cert. denied, Egbert v. Callaghan, 296 U.S. 646, 56 S.Ct. 247, 80 L.Ed. 459. The debtor corporation may well have been such an institution.

I believe that the trustee has the power and the right to allege and attempt to prove as a matter of fact, that C. L. I. C., under the management of D. A. Willbern, engaged in certain "acts of banking" in violation of the Banking Laws of Kansas. Both counts of the first amended complaint are directed toward the defendant's responsibility for his negligent and willful conduct in managing the debtor corporation. Whether some or all of such conduct consisted in violating or causing the debtor to violate state banking laws, if the debtor is subject to them, is a question for the finder of fact at the trial.

The defendant's motion for dismissal of the second count of the amended complaint is denied.

## APPENDIX
## MEMORANDUM OF DECISION
### January 22, 1963

The trustee has applied to the court for an order authorizing the filing of an action against D. A. Willbern. A copy of the complaint that would be filed, if authorized, has been submitted. In the proposed complaint it is alleged: (a) that Mr. Willbern, as vice president, director and controlling stockholder of the debtor corporation, was negligent in selling control of the debtor to the Elbel Construction Company when he should have foreseen that the purchaser would convert the assets of the debtor to the use of the purchaser and companies controlled by it (the Elbel companies); and (b) that Willbern, after the sale and while serving as a director of the debtor corporation, was guilty of nonfeasance in permitting the transfer of the debtor's assets to the Elbel companies.

At the request of Mr. Willbern and his attorneys, they having anticipated the application by the trustee, a conference was held in chambers on June 17, 1961. The trustee and his attorney; Mr. Willbern and his attorneys; the attorney for the creditors committee; and counsel for the Securities and Exchange Commission were present. It appearing that Mr. Willbern is active in the management of the First Federal Savings & Loan Association of Coffeyville, Kansas, and to avoid the possibility that the filing of the proposed action might adversely affect that association and its depositors, it was directed by the court that briefs be submitted and that, pending final determination by the court on the trustee's application, all papers, including the briefs, be impounded by the clerk. It was stipulated that Mr. Willbern would waive the benefits and defense of the statute of limitations from July 16, 1961, to the date of the filing of an action by the trustee, provided that such action be filed within sixty days after final decision on the trustee's application. Exhaustive briefs were submitted and have been considered by the court.

It was and is the duty of the trustee to investigate the conduct of the debtor and the operation of its business. It was and is his duty to "report to the judge any facts ascertained by him pertaining

to fraud, misconduct, mismanagement and irregularities, and to any causes of action available to the estate." 11 U.S. C.A. § 567.

While the trustee states in his application that the proposed complaint was prepared at the request of the Securities and Exchange Commission and the creditors committee, this does not in any way lessen the impact of the allegations which by the application are brought to the attention of the court.

It is asserted by the trustee that Mr. Willbern, prior to the sale to Elbel, was an officer, director and controlling stockholder of the debtor; that the debtor had solicited and received deposits of funds, issuing therefor thrift notes and investment certificates; and that other funds were obtained by the sale of preferred stock to the public. It was in large part these funds which were used for the acquisition of the assets which were owned by the debtor at the time that control passed to Elbel—assets which the trustee alleges were diverted by Elbel to the use of the Elbel companies. The trustee contends in effect that Mr. Willbern, under the circumstances then existing, owed a duty to the depositors to see to it that control of the debtor, carrying with it the power to deal with its assets, should not pass into the hands of a purchaser who would loot the treasury of the debtor with consequent loss to the depositors.

It is recognized that the owners of the majority of the stock of a corporation occupy a fiduciary relationship toward the minority stockholders; that the right to control is accompanied by a duty to those not in control. Southern Pacific Co. v. Bogert, 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099 (1919). More reasons exist for applying a similar rule to the relationship between the depositors and Mr. Willbern than to that between majority and minority stockholders. Stockholders have some opportunity to inform themselves and to take action to protect their interests. The depositors have no such opportunity and must rely upon their confidence in the corporation, which necessarily means confidence in those who control the corporation. Broadly stated, where property is entrusted to another because of confidence placed in the other, a fiduciary relationship arises.

Mr. Willbern does not deny the sale of control to Elbel and I am sure will not contend that he owed no duty to the depositors to protect the funds entrusted to the debtor by the depositors. He maintains, however, that he was not negligent and that he did investigate and assure himself of the financial standing and reputation of the purchaser. This may be true, and it is possible that on a trial of the case the trustee would not be able to convince the triers of the fact that the converse is true.

It is not necessary that it be established that Mr. Willbern had actual knowledge that Elbel intended to loot the debtor's treasury. It is sufficient if the circumstances are such that, despite actual ignorance of unlawful designs on the part of Elbel, he should have been charged with notice of such plans. The risk reasonably to have been perceived defines the duty to be obeyed. The principal factors to be considered are the nature of the assets which passed into the control of the purchaser by reason of the sale, the method by which the sale was consummated, and the relation of the price paid to the value of the stock sold. Gerdes v. Reynolds, Sup., 28 N.Y. S.2d 622, 653.

If on the trial the evidence should show that Mr. Willbern was deceived by false representations, it is unlikely that he would be held liable to the estate; but if it should be established that the circumstances were such as to have put him on notice and that the investigation made by him was inadequate, liability might follow. Insuranshares Corp. of Delaware v. Northern Fiscal Corp., 35 F.Supp. 22, 25 (E.D.Pa.1940).

A factual issue is thus presented, that is, whether the circumstances were such as to require of Mr. Willbern that he do more than he did to assure himself that the transferee of the controlling in-

terest in the debtor was not likely to use the acquired control to the disadvantage of the depositors.

"Whenever, in reorganization proceedings, fraud or mismanagement of officers or directors is alleged, full opportunity should be granted complainants to support their charges in open court." Gochenour v. Cleveland Terminals Bldg. Co., 118 F.2d 89 (6th Cir. 1941).

On the issue of Mr. Willbern's nonfeasance while serving as a director of the corporation after the transfer of control to Elbel, the trustee's position is that here, too, his relationship with the depositors was of a fiduciary nature. It cannot be denied that Mr. Willbern possessed a special knowledge of the business of the corporation. He, probably more than any other person, was familiar with its property. He, as a director, was in a better position than any other person alive to have protected the corporation against the assaults of looters. If it be true, as alleged, that the circumstances were such that he should have foreseen the possibility that Elbel would dissipate the assets, surely he then had a greater duty to take advantage of his position as director and thus prevent the loss suffered by his cestuis, the depositors. In effect, he was here given a second chance to prevent the loss which subsequently was suffered by those who had placed their trust in him.

His proposed defense to this charge is that technically he was not a director, not having filed a written acceptance of the office, and that in any case he did not attend meetings of the board of directors. The trustee asserts, and it is not denied, that Mr. Willbern testified in the bankruptcy proceedings that he was a director from the date of his election February 7, 1958, to the date of his resignation sometime in August, 1958. Within this period, it is alleged that $1,250,000 had been siphoned out of the treasury of the debtor.

We are dealing here, not with an ordinary business corporation, but with a financial institution; not with losses resulting from errors of judgment, but with deliberate transfers of assets from a sound concern to shaky ones. Any director, conscious of his duty to stockholders and creditors, would have felt an obligation to investigate the nature of the transactions which led inevitably to the collapse of the debtor.

Here again, determination of the issue would require the court to draw inferences from facts asserted, not by way of evidence, but by way of argument. Here again, opportunity should be given to the trustee to support the charges alleged.

The court cannot at this stage try the case on its merits. It would be abuse of discretion for the court to attempt to determine the issue of fact in chambers and without hearing evidence in support of and in opposition to the charges contained in the proposed complaint.

I am assuming that when he filed his application the trustee had weighed the probability of success in the suit against the expense of its prosecution. Since the filing of his application, the trustee has, through the briefs submitted by the attorneys for Mr. Willbern, been advised of the nature of the defenses that would be asserted, information possibly not theretofore in the possession of the trustee. To give the trustee an opportunity to reappraise the proposed litigation in the light of all information now available to him, I will not at this time enter an order granting his application. The trustee is requested to report his conclusions to the court by way of an amended application or by separate report. The report should contain the trustee's own recommendations as to whether in his judgment the probability of a successful outcome of the litigation would justify the expense of that litigation to the estate.

This memorandum will be marked "lodged" by the clerk and held impounded with other documents until the further order of the court. It will not be

considered by the court or by any interested party as the decision of the court within the meaning of the stipulation having to do with the defense of the statute of limitations.