In re ALVES PHOTO SERVICE, INC. d/b/a A.P.A., Inc., Mail–n–Save; Photo Corner; R. & P. Advertising and Alves Hallmark, Debtor.

Bankruptcy No. 80–00831–JG.

United States Bankruptcy Court,
D. Massachusetts.

Oct. 27, 1980.

John Whitlock, Boston, Mass., for Creditors' Committee.

Stewart F. Grossman, Boston, Mass., for debtor.

Goldstein & Manello, Boston, Mass., for trustee.

## MEMORANDUM AND ORDER RE: MOTION OF CREDITORS' COMMITTEE TO CONVERT TO CHAPTER 7

JAMES N. GABRIEL, Bankruptcy Judge.

The present action before this court is the motion of the Creditors' Committee of Alves Photo Service, Inc. to convert the pending Chapter 11 proceeding to a liquidation proceeding under Chapter 7 of the Bankruptcy Code. Objections to the motion have been filed by the debtor, the former principals of the debtor, the trustee and the Shawmut Bank of Boston, N.A. The United States Trustee and Massachusetts Business Development Corp. have also appeared in court in opposition to conversion at this time.

On May 22, 1980 Alves Photo Service, Inc., a Massachusetts corporation engaged in the business of providing photofinishing services and operating retail card and gift shops, filed a petition for relief under Chapter 11 of the Bankruptcy Code. A trustee was appointed.

Subsequent to his appointment, the trustee commenced actions to sell substantially all of the debtor's assets as an ongoing business. This court authorized individual sales of the photofinishing business, and thereafter, of the card and gift operation. The above sales were confirmed in July and September 1980. Funds in excess of $1.5 million were brought into the estate within three months of the trustee's appointment.

Timely sales of the debtor's assets as part of an ongoing business was determined to be the most expeditious course since rehabilitation was not economically feasible. This court finds that the estate accrued no loss and suffered no diminution during the

course of the trustee's administration of the estate, as evidenced by the reports duly filed by the trustee.

At the present time the remaining assets of the estate consist of minor photofinishing equipment, several small kiosks, certain accounts receivable, executory contracts of uncertain value and possible causes of action. Pending and potential litigation await resolution.

Pursuant to Section 1106 of the Code, the trustee commenced extensive investigation which the court finds to be especially appropriate in this case. Five full days of examination conducted by the trustee under Section 343 of the Code and Rule 205 of the Rules of Bankruptcy Procedure and three separate document production sessions had taken place at the time of this hearing and five more full days of Rule 205 examinations were anticipated. No party has suggested that these examinations are unnecessary.

During the course of this Chapter 11 proceeding the court has held numerous hearings on applications to sell, use of collateral and adequate protection and confirmation of sales. The Creditors' Committee has actively participated throughout the course of these proceedings. I find that at all times, all parties in interest were notified of the intended liquidation of substantially all of the debtor's assets, had an opportunity to appear and be heard, and in fact the Creditors' Committee did appear and was heard. Further, no party was ever heard to object to the trustee's strategy of administering the estate while liquidating its substantial assets.

The Creditors' Committee's motion seeks to convert these proceedings for cause pursuant to Section 1112(b)(1) and (2). The Committee has strenuously argued that the continuation of a Chapter 11 is an abuse of the reorganization procedures where liquidation has substantially been completed without a plan of liquidation having been proffered to creditors, voted on or confirmed. They allege, inter alia, that Section 1123(b)(4) of the Code does not provide for a Chapter 11 proceeding to liquidate

substantially all of the property of the estate prior to a confirmed plan. The Committee further substantiates its position by averring that no plan capable of formulation at the present time would provide the creditors with a meaningful choice and that continuing in a Chapter 11 would be less time and cost efficient than a Chapter 7 liquidation. Finally the movants assert their right, under 11 U.S.C. Section 702 to elect their own trustee in a liquidation proceeding. However, there have been no allegations of cause during these proceedings for the removal of the present trustee. All parties have agreed that the trustee and professionals employed by him are performing their duties according to the highest standards.

The numerous objectors to this motion to convert have argued that conversion would not be in the best interest of the estate or creditors and that no cause has been shown. Further they contend that the Creditors' Committee's argument that the trustee could propose a liquidating Chapter 11 plan but is not permitted to liquidate is spurious and was not the intent of Congress when drafting the new Code. This Court agrees.

■ Conversion of a Chapter 11 case to a liquidation proceeding under Chapter 7 is governed by Section 1112(b) of the Bankruptcy Code, which states in relevant part:

> ... on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including;
>
> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
>
> (2) inability to effectuate a plan.

Discussion of subsections (3) through (9) is unnecessary as they are irrelevant to the instant proceeding as no time has been fixed for the filing of a plan by this court and no plan has yet been proposed to creditors.

The Committee has argued that since the trustee acknowledged the business could not be conducted profitably and rehabilitation was impossible, the requirements of Section 1112(b)(1) have been satisfied. A closer inspection of the subsections indicates that the inability to rehabilitate must be accompanied by continuing loss to or diminution of the estate to constitute cause.

The intent of Congress to combine the above factors is clear from the Legislative History. The Senate bill, S. 2266, included each factor separately as Section 1112(b)(1) and Section 1112(b)(2). The House version, H.R. 8200, excluded both factors from the list of causes therein enumerated.[1] Section 1112(b)(1) as enacted represents a compromise between the House and Senate bills by requiring both factors to be present simultaneously. *Senate Report No. 95-989*, 95th Cong. 2d Sess. (1978) at 117, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5903.

■ Furthermore, *Collier on Bankruptcy* suggests that the term "rehabilitation" does not mean the same thing as reorganization, as such term is used in Chapter 11.[2] The preferred interpretation of the term as used in Section 1112(b)(1) refers to the ability to confirm a plan of reorganization, which may provide for liquidation and is considerably different from obtaining a sound financial structure. *5 Collier on Bankruptcy*, Para. 1112.03, at 1112–14 (15th edition, 1980). Without relying on the above distinction, this court finds that no cause exists under Section 1112(b)(1) because there has been no loss or diminution of the estate during the trustee's administration.

The Committee also contends that cause exists pursuant to Section 1112(b)(2); namely, the inability to effectuate a plan. Section 1123(b)(4) of the Code provides that a plan may propose a sale of substantially all of the property of the estate. Furthermore, Section 1123(a)(5) which mandates a plan *to provide adequate means for its exe*-cution, expressly permits "the sale of all or any part of the property of the estate . . . or the distribution of all or any part of the property of the estate among those having an interest in such property of the estate."

The plan required in a reorganization proceeding must conform to the provisions of Section 1123 and must satisfy confirmation standards in Section 1129. Particular scrutiny must be given to Section 1129(a)(7) in this proceeding, since a liquidation plan is the only viable alternative. In relevant part, Section 1129(a)(7) provides:

With respect to each class—

(A) each holder of a claim or interest in such class—

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date.

■ The court must properly evaluate the relative costs of administrative expenses in the Chapter 11 case as compared to those contemplated in a Chapter 7 case to determine whether a Chapter 11 plan meets confirmation standards.

The cost–benefit analysis must consider that a Chapter 11 plan will necessitate drafting of a disclosure statement and plan, disclosure and confirmation hearings and the tabulation of creditor's votes in addition to postage costs for dissemination of the requisite materials.[3]

■ Balanced against the above–enumerated requirements and their attendant cost is the fact that upon conversion under Section 1112, the service of any trustee serving in the case prior to conversion, immediately terminates. 11 U.S.C. Section 348(e). Based upon oral representation during the hearing on this motion, the majority of the

---

1. 124 Cong. Rec. H 11,103 (Sept. 28, 1978); S 17,419 (Oct. 6, 1978).

2. *5 Collier on Bankruptcy*, Par. 1112.03 at 1112 (15th Ed. 1980).

3. This distribution plan and its attendant disclosure statement require mailing to fewer than 150 creditors.

creditors on the Creditors' Committee will seek to replace the current trustee upon a vote pursuant to Section 702. Therefore, the court must consider the additional expense of administration which will be likely to occur as well as the expense which is mandated by passing all liquidation assets, considerable in this case, through two trustees. The attendant cost of new counsel for the trustee, the disruption of the present investigation and the resulting delay and expense necessary to educate replacement fiduciaries, along with the possibility of duplication of discovery efforts which have been completed, are all factors to be weighed.

■ This court finds that it is most probable, according to the facts of this particular case, that the purported savings derived from a conversion would not offset the additional replacement costs, and therefore, that a proposed plan would meet confirmation standards.

It appears clear that liquidation is permissible in a Chapter 11 proceeding under the Code and that a plan, with a declaration of dividend, can be effectuated in this case. Thus, no cause pursuant to Section 1112(b)(2) is found to exist.

Section 1112(b) gives wide discretion to the court to make an appropriate disposition of the case. Its terms are not mandatory, but permissive. The court is given broad use of its equitable powers to reach an appropriate result in individual cases. *Senate Report No. 95–989*, 95th Cong. 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The court is cognizant that the list in Section 1112(b) is not intended to be exclusive [4] and other theories of cause may be propounded.

Relying heavily on the Supreme Court opinion in *Fidelity Assurance Assoc. v. Sims*, 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032 (1942), the creditors committee has advanced the argument that once liquidation has been substantially accomplished, no plan may be submitted. Upon thorough reading it is apparent that the Chapter X case was dismissed in *Fidelity* for lack of good faith at the outset of its filing. It was in dictum that the *Fidelity* court stated "the statute does not contemplate a liquidation in a Chapter X proceeding but a liquidation in ordinary bankruptcy or a dismissal outright." *Fidelity Assurance Assoc. v. Sims*, 318 U.S. 608 at 621, 63 S.Ct. 807 at 813, 87 L.Ed. 1032 (1942).

The tenth circuit, under the Bankruptcy Act, seems to have held to a position of automatic termination of reorganization proceedings absent a plan that would continue the corporation in business. *Claybrook Drilling Co. v. Divanco, Inc.*, 336 F.2d 697 at 701 (10th Cir. 1964); *In re Colorado Trust Deed Funds, Inc.*, 311 F.2d 288 at 290 (10th Cir. 1962), see also: *In re Public Leasing Corp.*, 488 F.2d 1369 at 1373–74 (10th Cir. 1973). However, in a factual situation closely similar to the one in the present case, where substantially all of the debtor's assets had been sold in accordance with court order during the course of the Chapter X proceeding and prior to the filing of a plan, the second circuit determined that it was not necessary to dismiss the proceedings in Chapter X and convert the case to a straight bankruptcy. *Patent Cereals v. Flynn*, 149 F.2d 711 at 712–713 (2nd Cir. 1945). Likewise in *In re Stirling Homex Corp.*, 591 F.2d 148 (2d Cir. 1978), the court held that "once a Chapter X reorganization has commenced in good faith, a later decision to liquidate by no means requires discontinuance of the petition and the added administrative and other expense that a newly commenced bankruptcy proceeding would entail." *Stirling*, 519 F.2d at 153. This position also finds support in other circuits.[5]

---

**4.** 11 U.S.C. Section 102 Rules of Construction
In this title·
    (3) "includes" and "including" are not limiting

**5.** See: *In re Combined Metals Reduction Co.*, 557 F.2d 179 (9th Cir. 1977); *In re Automatic*

*Washer Co.*, 226 F.Supp. 834 (D.C.Iowa), affirmed 338 F.2d 1006 (8th Cir. 1964); *In re Lorraine Castle Apts. Bldg. Corp.*, 149 F.2d 55 (7th Cir.) cert. denied 326 U.S. 728, 66 S.Ct. 35, 90 L.Ed. 432 (1945); *In re Barlum Realty Co.*, 62 F.Supp. 81 (E.D.Mich.) (dictum), affirmed on

Accordingly this court finds that the determination that liquidation of the assets is in the best interests of the estate is not, alone, sufficient cause to mandate conversion to a Chapter 7 proceeding.

In the context of this proceeding the court finds that continuance in a Chapter 11 is likely to be more time and cost efficient. The delay inherent in the six month proof of claim filing period in a Chapter 7 [6] will be eliminated and the creditors will be provided with the opportunity for an accelerated claims resolution process intrinsic to a Chapter 11. Furthermore, because of the outstanding extensive investigation which must be completed and the possible litigation which may follow, distribution in a Chapter 7 is likely to be subject to significant delay. The partial distribution procedure in Chapter 11 pursuant to Rule 11–33(b)(2) may begin immediately after confirmation of a plan, benefitting the general creditor body.

A final contention of the Creditors' Committee is that if the court does not order conversion to a Chapter 7, their right to elect a trustee under Section 702 would be abridged. The court finds the argument to be without merit. The primary determination must be whether or not conversion is appropriate. Where there is cause to convert, the creditor's right to elect a trustee will follow as a matter of law. On the other hand, when the case continues in a Chapter 11, the question becomes moot, as no rights under Section 702 could be ascribed to the Creditors.

In accordance with the above findings of fact and conclusions of law, this court finds that no just cause exists for the conversion of this case to one under Chapter 7.

The ruling in this case is limited to the specific circumstances herein. This court does not purport to hold that in all instances where a Chapter 11 proceeding has commenced, after the sale of substantially all of the debtor's assets, it would be inappropriate to convert the case to Chapter 7. However, given the facts in this particular case, the court finds such conversion would not be in the best interests of the creditors and of the estate. The Creditors' Committee's motion is hereby denied.

other grounds, 154 F.2d 562 (6th Cir. 1946); *Central States Elec. Corp. v. Austrian,* 183 F.2d 879 (4th Cir. 1950) (dictum) cert. denied 340 U.S. 917, 71 S.Ct. 350, 95 L.Ed. 662 (1951); *In re Chelsea Hotel Corp.,* 246 F.2d 133 (3rd Cir. 1957).

**6.** Rules of Bankruptcy Procedure 302(e).